## Barker & al. *vs.* Roberts.

Where *A.* agreed to take the logs of *B.* at a certain place, and at an agreed method of computing the quantity,—to saw them into boards, and transport and deliver the boards to *B.*—and the latter agreed to sell the boards, free of charge for commissions, and to allow *A.* all they should sell for, beyond a stipulated price per thousand,—the property to be and remain all this time at the risk of *A.* :—it was held that this was not a sale of the logs to *A.*, but was merely a *locatio operis faciendi.*

This was an action of *assumpsit,* brought to recover the proceeds of certain logs which the plaintiffs alleged to be their own property, and which the defendant had converted into boards and sold for cash; he claiming them as his own, by purchase from *Cowan & Oaks.*

It appeared at the trial before *Weston J.* that the plaintiffs, being the original owners of the logs, entered into a written agreement with *Cowan & Oaks,* of the following tenor :—" Memorandum," &c. " That the said *Cowan & Oaks* on their part agree to take, at the *Sunkhaze* boom, a certain lot of logs, at the scale known by the name of the *Babcock* logs, and scaled by *Daniel Davis,* to saw and run to *Bangor* all the boards said logs make, free of any expense to the other party, as soon and as fast as one saw can saw them ; and *Barker & Crosby* agree to dispose of said boards free of any commission, either to sell or ship to *Boston,* as they the said

*Barker & Crosby* may see fit; and allow to the said *Cowan & Oaks* all they shall nett over seven dollars per thousand. It is understood that the said *Cowan & Oaks* risk the logs after they are scaled, and risk the boards after the logs are sawed, until they are marketed." *Cowan & Oaks*, instead of sawing the logs, sold them to the defendant; who contended that the contract imported a sale of the logs to his vendors, and not a bailment for manufacture. But the Judge, for the purpose of settling other facts, overruled this position, and reserved it for the consideration of the whole court, a verdict being returned for the plaintiffs.

*Sprague* and *Kent* argued for the defendant, that the contract was sufficient proof of a sale of the logs, as it contained all the elements of a sale. Here was a fixed price, which is always received as evidence of an intent to sell;—*Marsh v. Wickham*; 14 *Johns.* 168;—and the goods were ever afterwards at the risk of the vendee;—who agreed "to take" the logs; which, in connection with a price named, means "to buy;" 2 *Kent's Com.* 367; *Buffum v. Merry*, 3 *Mass.* 478; *Hussey v. Thornton*, 4 *Mass.* 405; 6 *Mass.* 422. But if, as between the original parties, the plaintiffs might claim the lumber; yet the terms of the contract are such as to authorise *Cowan & Oaks* to convey a good title to a stranger.

*Allen* and *Starrett*, for the plaintiff, cited *Babcock v. Gill*, 10 *Johns.* 287; *Seymour v. Brown*, 19 *Johns.* 44; 3 *Dane's Abr.* 190; *Collins v. Forbes*, 3 *D. & E.* 316; *Barrett v. Pritchard*, 2 *Pick.* 512; *Patten v. Clark*, 5 *Pick.* 5; 7 *Johns.* 257; 8 *Johns.* 445.

WESTON J. delivered the opinion of the Court, at the ensuing *June* term in *Washington.*

The contract between the plaintiffs and *Cowan & Oaks*, though sufficiently definite, if each had fulfiled the stipulations by them respectively entered into, is somewhat obscure as to the question now raised by a third person, there having been a breach of the contract on the part of *Cowan & Oaks*, viz. whether there was a sale to them by the plaintiffs of the logs, from which the boards in contro-

versy were made ; but upon consideration, we are all of opinion that there was no sale. In common parlance, to take at a settled and agreed price, is a sale. But it is a term which applies at least as appropriately and as aptly to bailments. The agisting farmer takes cattle, to depasture. The tailor, cloth, to make into garments, and various artists and manufacturers, raw materials to manufacture for the owners. And we are satisfied the contract between the plaintiffs and *Cowan & Oaks*, was of this description.

The price to be paid for the logs, is not stated in that part of the written instrument, where it is said that *Cowan & Oaks* are to take them, and if it had been a sale, it would naturally and properly have been stipulated for in this connection. It is no where stated what the price of the logs was to be, but it is matter of deduction from the contract, that they were considered by the parties, as of the value of seven dollars, for so many as would make a thousand feet of boards. The object of the parties manifestly was, that *Cowan & Oaks* should receive the logs at *Sunkhaze*, that they should saw them into boards, that they should run the boards to *Bangor*, and there deliver them to the plaintiffs. Their compensation was to depend upon the marketable value of the boards at *Bangor*, or upon what they might produce upon a shipment to *Boston*. Whatever sum, beyond seven dollars, might be obtained for the boards, was to be paid to them by the plaintiffs. In this arrangement, the logs were doubtless considered worth seven dollars a thousand, and the increased value, arising from the services of *Cowan & Oaks*, was regarded as rightfully belonging to them. It is not stated that the plaintiffs were to retain the seven dollars as the price of the logs. There was no occasion for such a provision, if no sale was made, but the affirmative stipulation was, that the plaintiffs should pay to *Cowan & Oaks* a sum of money, to be ascertained upon certain principles prescribed.

In the survey of logs, their quantity is not ascertained by the exact number of feet of boards they may make, when manufactured, but by the judgment of appraisers, or by a scale, which in some places is of such general and uniform application, as to be consid-

ered adopted in all contracts in relation to logs, when no other mode of admeasurement is agreed upon. In this case, the logs were to be scaled by *Daniel Davis*, and this was necessary, not to determine what *Cowan & Oaks* should pay, for they engaged to pay nothing, but how much they should receive upon a final sale of the lumber. Much stress has been laid upon the express stipulation, that the logs and the boards should be at the risk of *Cowan & Oaks*, and this it is urged is an essential and decisive criterion of the right of property. And doubtless it is, where the risk is a deduction of law, for it is then, except in the case of common carriers, and perhaps in a few other special cases, an effect and consequence of the right of property. The former results from the latter. But it is otherwise, where the risk arises from the express agreement of the parties. It is expressed, because it would not be implied. Nothing is more common than for one to take the risk of another's property. With certain qualifications, the law imposes it upon common carriers. What led to this provision, in the contract under consideration, does not appear, but it does not afford evidence of a change or transfer of the logs from the plaintiffs. It was matter of convention, as was the engagement on the part of the plaintiffs, that they would charge no commissions for their services. And this last stipulation is urged as an evidence of the transfer of the logs ; because it is insisted that there could be no pretence that the plaintiffs would be entitled to a commission for the sale of their own property, but had it not been for this provision, it might have been claimed by them as a fair deduction from what *Cowan & Oaks* were to receive ; as it was a service of which they were to have at least part of the benefit.

*Hussey & al. v. Thornton & al.* was a case of conditional sale ; the question raised here is, whether there was any sale whatever.

*Judgment on the Verdict.*