## JORDAN *v.* JONES.

Where a landowner agreed with a laborer to allow the latter to cut timber from the land and transport and deliver the logs to a third person who was to reserve from their sale a certain amount per thousand feet for the landowner, and the laborer cut a number of logs but then abandoned the enterprise before transporting or delivering them to the third person agreed upon, the title to the logs thus cut did not pass to the laborer and they are not subject to levy and sale as his property.

Argued February 2, — Decided February 28, 1900.

Certiorari. Before Judge Evans. Washington superior court. March term, 1899.

*E. W. Jordan* and *James K. Hines,* for plaintiff in error.
*Rawlings & Hardwick,* contra.

SIMMONS, C. J. Jordan, a landowner, agreed with Adams, a laborer, that the latter might cut certain trees standing upon the land of Jordan, and, after drifting and rafting them from a lake near-by to a river, deliver them to Snell who there had a sawmill upon a barge. It was agreed that Snell should reserve for Jordan $2.50 per thousand feet, and should not pay such $2.50 to Adams. In pursuance of this agreement, Adams cut some of the timber and transported it to the sawmill of Snell, who held the agreed amount for Jordan. After this it seems

that Adams abandoned the enterprise, leaving in the swamp some thirty-six sticks of timber which he had cut. Subsequently Jordan hired some other laborers to drift these logs and take them to a sawmill. Before this had been done, the logs were levied upon as the property of Adams. Jordan filed a claim, and, on the trial of this claim before a jury in the justice's court, the property was found subject. Jordan sued out a certiorari to the superior court, and on the hearing there the certiorari was overruled and the verdict of the jury sustained. Jordan excepted.

In our investigation of the authorities we have been unable to find a case like this. The relation established between Jordan and Adams by their agreement has some of the elements of an executory agreement (1 Benjamin Sales (Corbin's ed.), 359, 376), some of a partnership, some of a conditional sale (21 Am. & Eng. Enc. L. 476 et seq., and cases cited), and many of the elements of a bailment. Whatever it may be, we are clear that the title to the logs did not pass to Adams, and that they were therefore not subject to an execution against him. In construing such an agreement, the intention of the parties, if it can be arrived at, must control, and an effort should be made to ascertain where, under the agreement, they intended that the title should remain. There is nothing in the evidence to indicate that it was the intention of either Jordan or of Adams that the title should immediately or at any other time pass to Adams. Jordan was to furnish the timber, and Adams to cut it and transport the logs to Snell, who seems in this sense to have been their common agent. We can infer that Snell was to buy the logs at the market price and reserve $2.50 per thousand feet for Jordan, paying the balance to Adams. The title would thus remain in Jordan until the logs were sold to Snell. Adams was to have no title to the logs, but was only to receive from Snell their price less the $2.50 per thousand feet reserved for Jordan. This view is strengthened by Jordan's undisputed testimony to the effect that he knew Adams to be irresponsible, and for that reason would not sell him the logs. He refused to make a sale, but finally made the agreement above stated. Had the logs been destroyed by fire or swept away by flood, the loss would

have fallen upon Jordan, and he could have recovered nothing of Adams. Certainly Adams could claim no title after having abandoned the contract and left the logs in the swamp, so that Jordan, in order to protect himself from the loss of the logs, had to take charge of them and hire other laborers to transport them to a sawmill. A case very much in point is that of Barker v. Roberts, 8 Mc. 101. In that case "A agreed to take the logs of B at a certain place and at an agreed method of computing the quantity, to saw them into boards, and transport and deliver the boards to B; and the latter agreed to sell the boards, free of charge for commissions, and to allow A all they should sell for beyond a stipulated price per thousand, the property to be and remain all this time at the risk of A;" and the court held "that this was not a sale of the logs to A, but was merely a locatio operis faciendi," or contract of bailment for labor and services to be performed upon the thing bailed. As to whether the contract was one of bailment or of sale, the present case differs from that just cited only in that the logs were not to be returned to the original owner but to Snell; and as Snell may properly be regarded as his agent to receive them, we think this difference is immaterial, and the cases, on principle, almost identical. See also Pierce v. Schenk, 3 Hill (N. Y.), 28; Edwards, Bailm. §§ 121, 325, 410, 416, et seq., 421, 447; Lawson, Bailm. § 8.

Judgment reversed. All the Justices concurring, except Fish, J., who was disqualified.