## CLARKE BROTHERS v. McNATT.

1. Where a vendor of personal property delivers possession of it to the vendee, but receives from the latter a promise to pay a stipulated amount therefor and an agreement that the title shall remain in the vendor until payment has been made, it is not generally necessary to the validity of such a contract as against the vendee or one purchasing under him that it should be signed by the vendor.

(a) Where a contract on its face provides or shows that the parties intended for both to sign before it takes effect, it is not complete until both do so.

2. Where a contract of sale of personal property, with the title retained in the vendor till payment of the purchase-price, provided that the vendee might sell the property to a purchaser or purchasers who should make the check or checks payable to the vendor, and that the latter should apply one half to his vendee to pay for the expense of preparing and marketing the product, and such contract was recorded, if a purchaser from a vendee was affected with notice of such terms, as against him they could not be varied by a subsequent parol agreement between the original vendor and vendee under which one half of the amounts received from sales of the lumber was not applied to the purchase-price, but to another indebtedness of the vendee to a firm of which the vendor was a member, for supplies furnished to the vendee.

3. A contract of sale in regard to timber which is attached to the soil, but which is presently to be severed therefrom and converted into personalty before the title is to pass to the purchaser, is an executory sale of personalty, and not of an interest in land.

4. If a vendor of personal property retains title under a written and recorded contract until payment of the purchase-money, but it is also provided in such contract that the vendee may sell the property, consisting of lumber to be cut and carried to market, the vendor can not impose on a bona fide purchaser or purchasers from his vendee, without notice of such limitation, other than the mere recording of the contract, the duty of seeing that he receives the proceeds of the

sale or sales; nor, as against such a bona fide purchaser without notice, can he accomplish such result by stating in the contract that the sales shall be made to a purchaser who will make the checks payable to him.

Argued January 16,—Decided May 13, 1909.

Trover. Before Judge Seabrook. McIntosh superior court. February 7, 1908.

James McNatt brought an action of bail-trover against Clarke Brothers, seeking to recover two rafts of timber. The defendants denied the plaintiff's title to the property, and contended that it belonged to them. McNatt was the owner of certain timbered lands. T. P. McBride and W. D. Petersen executed and delivered to him the following written contract, which was recorded: "State of Georgia, Montgomery County. This indenture and contract of lease made and entered into this the 22nd day of January, 1903, between James McNatt of the first part and T. P. McBride and W. D. Petersen of the second part, all the parties of the county and State aforesaid, witnesseth, that for and in consideration of the sum of two thousand and thirty-six and 42/100 dollars to be paid as hereinafter provided, as the purchase-price of all the sawmill timber on the following tract of land· [describing it]. The aforesaid condition [consideration?] of two thousand and thirty-six dollars and 42/100 is to bear interest at the rate of eight per cent. per annum from the above date, and is to be paid as follows: , The said parties of the second part hereby agree, in order to pay the aforesaid sum of two thousand and thirty-six and 42/100 dollars and all interest that may accrue thereon at the said rate of 8% per annum, to cut, haul, and saw square all the sawmill timber on the land aforesaid, and when the same is ready for the Darien market then the same is to be sold to a buyer who will make the check payable to the said James McNatt, who hereby agrees to return to the said party of the second part one half of the proceeds of said check in order that the said parties may defray the expenses incurred by reason of preparing the said timber for market. It is further agreed by the parties to this contract, that the said James McNatt reserves the title to the aforesaid sawmill timber and control and sale thereof until the purchase-price aforesaid is paid. In order to further secure the aforesaid sum of two thousand and thirty-six and 42/100 dollars, we hereby mortgage and create a

lien on the following personal property, to wit: [describing it]. It is further agreed that the above sum of two thousand and thirty-six and 42/100 dollars to become due and collectible in six months from the above date; and should we fail to pay the aforesaid sum of two thousand and thirty-six and 42/100 dollars, we hereby constitute the said James McNatt our lawful authorized agent to sell said mules heretofore described and to execute titles thereto in our names after having advertised the same for ten days at the court-house in Montgomery county, Georgia, said Co., and appropriate the proceeds to the payment of the aforesaid sum and all interest and costs that may accrue thereto. And we hereby waive and renounce for ourselves and families all the rights to the homestead or exemption laws which we may have under or by virtue of the constitution or laws of the State of Georgia or of the United States, as against this note or any renewal thereof. In witness whereof we have hereunto set our hands and seals, the day and year first above written. T. P. McBride. (L. S.) W. D. Petersen. (L. S.) Signed, sealed, and delivered in presence of W. L. Wilson, Com. N. P. M. Co., Ga. Recorded January 28th, 1903. D. B. Graham, Clerk."

On this were entered four credits of $90.82, $462.97, $440.64, and $366.67, respectively. McBride and Petersen cut timber from the property and caused it to be sold. Some of the drafts or checks given in payment were made payable to McNatt, and some to the order of McBride and Petersen. In order to carry on the business, McBride and Petersen purchased supplies from merchants, a large part of them from E. T. McBride & Company, which firm was composed of E. T. McBride and the plaintiff, McNatt. The plaintiff testified that that firm would not furnish McBride and Petersen with supplies until he agreed that the indebtedness due them should first be paid from the proceeds of the timber as cut and sold, and then the balance should be paid to him on account of the purchase-price, he saying, "If anybody loses, let it be me." He admitted that $2,037.42 had been by consent delivered to E. T. McBride & Company; and said, that, after settling the account of that firm, he received certain payments for which he gave credit on the contract with McBride and Petersen. He testified that these applications of payments were made by agreement between himself, E. T. McBride & Company, and McBride and Petersen. He indorsed

drafts which were payable to him. Finally Clarke Brothers bought the timber now in controversy from McBride and Petersen, and gave drafts which were not payable to McNatt. These drafts did not come into the hands of the plaintiff, and he sought to recover the timber. There was also testimony tending to show notice to Clarke Brothers of a claim to the property by the plaintiff. On behalf of the defendants there was testimony that the consideration for the entire timber had been paid to McNatt, and that nothing was due him on account of it when the sale was made to Clarke Brothers. There was also evidence conflicting in some respects with that of the plaintiff as to any agreed application of the proceeds of timber first to the account of E. T. McBride & Co. There was much other evidence which it is unnecessary to set out. The jury found for the plaintiff. The defendants moved for a new trial, which was refused, and they excepted.

*William L. Clay,* for plaintiffs in error.

*E. J. Giles, C. M. Tyson,* and *Hines & Jordan,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. Objection was made to the admission of the contract in evidence, on the ground that it was not signed by McNatt. Section 2776 of the Civil Code, on the subject of conditional sales, declares that "every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing, and not otherwise. And the written contract of every such conditional sale shall be executed and attested in the same manner as mortgages on personal property." It is not required that the vendor as well as the vendee shall sign the written instrument. *Smith* v. *DeVaughn,* 82 *Ga.* 574 (9 S. E. 425). If the personal property is delivered into the possession of the vendee, the object is to provide a method of putting third parties on notice that the apparent title thus evidenced by possession is not in fact such, but that the title rests in the vendor until the condition of the sale shall be fulfilled. As against creditors or persons claiming under the vendee it does not require the signature of the vendor. The contract is in some degree analogized, in the section of the code, to a mortgage. An instrument of the latter kind is signed by the mortgagor, and a bill of sale to secure a debt is signed by the debtor. If the property should remain in the possession of the vendor, and it were sought to set up notice as against his creditors

or persons holding under him, a different question might be presented.

The instrument in the present case contains some indication that the vendor should have signed it, as agreements by him are stated in it; but in the latter part it apparently contemplates only the signature of the vendees. If a contract is intended to be signed by both parties, and so appears on its face, it is not complete until thus signed. *Delaware Ins. Co.* v. *Pennsylvania Fire Ins. Co.,* 126 *Ga.* 388 (55 S. E. 330), and citations. But as it is not clear that both vendor and vendees intended to sign the contract before it should become effective, and as both have acted under the instrument, and the lumber has been cut and sold by the latter, a failure of the vendor to sign will not be held to operate so as to convey complete title to the vendees, who did sign the instrument, which was duly attested and recorded.

2. The court charged the jury as follows: "If, however, notwithstanding the original agreement between McNatt and McBride and Petersen, [another was made] by the terms of which the original agreement in that respect was varied, and that McNatt should take the money, and did take the money received from timber sold by McBride and Petersen, and by their direction or consent applied it first to the extinguishment or partial payment of any debt due to McBride and Company, why, McNatt would have the right to so apply it, if it was with the consent and direction of McBride and Petersen; and if he did so apply it, whatever portion was left after being so applied to the indebtedness of McBride and Company, the rest would be applied to the payment of the lien. You will ascertain how much has gone to the payment of the original price of the timber. If sufficient to discharge it, why, as I say, the plaintiff can not recover. If not sufficient to discharge it, provided that you find that the subsequent contract has been satisfactorily proven, why, then the plaintiff should recover, because his lien would still be in existence; he would have a right ahead of the rights of Clarke Brothers, or any other purchaser of timber." This charge was erroneous. If the reservation of title was good as against purchasers of the timber from McBride and Petersen, and if they were charged with notice of the contents of the contract, and the conditions and agreements contained therein, to allow those conditions and agreements to be varied as against

them by a parol agreement between McNatt and McBride and Petersen would be substantially to allow a parol reservation of title instead of a written one. The nature of this contract of conditional sale will be considered later; but for the present it is enough to say that if McNatt could rely on the written contract as affecting the rights of purchasers from McBride and Petersen, he could not also injuriously affect those rights by means of a subsequent parol agreement or understanding with his immediate vendees. Suppose that Clarke Brothers had bought enough of the timber to have paid the entire purchase-money to McNatt after deducting what should go to the payment of expenses, and had made a check payable to McNatt in strict accordance with the terms of the written agreement between him and McBride and Petersen. McNatt could not, with the assent or agreement of McBride and Petersen, have applied such a payment to other indebtedness than the purchase-money of the timber, and still have recovered the timber from Clarke Brothers. Under the charge of the court above quoted, this would have been possible. That payments by purchasers from McBride and Petersen were made at different times, or that McNatt treated checks not made to his order as sufficient by accepting and applying them, would not authorize him to insist on the terms of the written instrument as against purchasers from McBride and Petersen, even though bona fide and without notice other than such as the record of the paper might carry, and at the same time vary the terms of such instrument by parol agreement with McBride and Petersen, and set up the variance also as against the rights of such purchasers, who were not shown to have had any knowledge thereof or to have acquiesced therein. The error contained in the charge above set out entered into several other portions of the charge which were made grounds of the motion for a new trial. It was not an ordinary question of application of payments between debtor and creditor, which could be controlled by agreement, or when in the absence of agreement the creditor could make the application, or in the absence of this the law would make it for the parties. Civil Code, § 3722. It was an effort to set up the strict terms of a written contract between vendor and vendee, with reservation of title in the former, against third persons, but to bind such persons also by a departure from the contract. If McNatt received enough

from sales of timber by McBride and Petersen to pay the purchase-money in full in accordance with the terms of the written agreement, he could not set up as against third parties an agreed diversion of such purchase-money to the payment of other indebtedness of McBride and Petersen to him or to the firm of which he was a member.

3, 4. It was urged that the verdict was contrary to law and evidence, because, under the undisputed evidence and under the written instrument which was introduced, McNatt was not authorized to recover. In *Jordan* v. *Jones,* 110 *Ga.* 47 (35 S. E. 151), where a landowner agreed with a laborer to allow the latter to cut timber from the land and transport and deliver the logs to a second person, who, by agreement, was to reserve from their sale a certain amount per thousand feet for the landowner, the contract was sustained, and it was held that the title to the logs did not pass to the laborer; and that when he abandoned the contract and left on the land certain logs which had been cut by him, they were not subject to levy as his property. It was said that the contract was a peculiar one, and that the relation between the landowner and the laborer had some of the elements of an executory agreement, some of a partnership, some of a conditional sale, and some of a bailment. A contract of sale of growing trees concerns an interest in realty. *Corbin* v. *Durden,* 126 *Ga.* 429 (55 S. E. 30). An agreement for the sale of property attached to the soil, but which is to be severed therefrom and converted into personalty before the title to the property is to pass to the purchaser, is an executory sale of personal property, and not of an interest in land. *Graham* v. *West,* 126 *Ga.* 624 (55 S. E. 931). Under these rulings, the contract now before us should be treated as dealing with personal property rather than with realty, at least as to the timber which was to be cut and sold. It was not a bailment, but a sale. It was not a method of paying persons, who should cut the timber and prepare it for market, for their services, as in *Jordan's* case, supra.

Aside from legislative acts regulating conditional sales and their record, such sales have been productive of much litigation. Starting with the maxim that no one can convey a title which he does not own, a variety of modifications and limitations of its application have resulted from the conduct of the parties. It was at one

time a subject of controversy as to whether an owner of personal property who placed it in possession of another under a contract of conditional sale, and thus invested the purchaser with prima facie evidence of ownership, could assert his title as against a bona fide purchaser without notice from such person, or against a creditor of the person so entrusted. As to bailments, it was clear that the bailor could not be held to have lost his property by merely entrusting it to the bailee for a specific purpose. As to conditional sales, the view generally prevailed, that, while possession of personalty was prima facie evidence of ownership, it was only prima facie so, and was subject to be rebutted by proving the actual title; and that therefore, where a conditional sale was made with reservation of title in the vendor until the condition should be performed, such as the payment of purchase-money, the mere delivery of possession to the vendee, without more, did not destroy the right of the vendor to assert his title even as against a bona fide purchaser without notice, from the vendee. But if the vendor went further and conferred upon the vendee the actual or apparent right of sale, the right of a bona fide purchaser without notice would prevail. Thus in Leigh v. Mobile & Ohio R. Co., 58 Ala. 165, Brickell, C. J., said: "Another class of cases forming an exception to the general rule is, when the owner, by his own act or consent, has given another such evidence of the right to sell, or otherwise dispose of his goods, as according to the customs of trade, or the common understanding of the world, usually accompanied the authority of sale, or of disposition. Then, if the person entrusted with the possession of the goods, and with the indicia of ownership, or of authority to sell, or otherwise dispose of them, in violation of his duty to the owner sells to an innocent purchaser, the sale will prevail against the right of the owner. He ought to bear the loss which may follow from his misplaced confidence, rather than the bona fide purchaser, who relied on the evidence of property, or of authority with which he clothed the possessor." In 1 Mechem on Sales, § 601, it is said: "But the rule permitting the conditional vendor to retake his goods in case of default, even from a bona fide purchaser from his conditional vendee, very obviously should not, and does not, apply in those cases in which the goods have been delivered to the conditional vendee for the very purpose of being resold to such a pur-

chaser; as where a retail dealer· obtains goods from a ·wholesale dealer upon the agreement that the title to the goods as a bulk shall remain in the latter, but the retail dealer is impliedly, if not expressly, permitted to sell from the bulk in the usual course of trade. · A sale of the goods in bulk might be deemed unauthorized and pass no title, but the retail purchaser in the usual course of business would, where such resales were expressly or impliedly authorized, obtain a good title, though the retail dealer might fail in paying for the goods." See also, on the general subject, Winchester Wagon Works and Mfg. Co. v. Carman, 109 Ind. 31, 9 N. E. 707, 58 Am. R. 382 (a case involving a conditional sale·of a car-load of twenty wagons by a manufacturer to a dealer) ; Columbus Buggy Co. v. Turley & Parker, 73 Miss. 529 (19 So. 232, 32 L. R. A. 260, 55 Am. St. R. 550) ; Fitzgerald v. Fuller, 19 Hun (N. Y.), 180; Ludden v. Hazen, 31 Barb. (N. Y.) 650; Wilder v. Wilson, 16 Lea (Tenn.), 548; Rogers v. Whitehouse, 71 Me. 222; Devlin v. O'Neil, 6 Daly (N. Y. Com. Pl.), 305; Brinton v. Gerry, 7 Ill. App. 238; McCombs v. Guild, Church & Co., 9 Lea. (Tenn.), 81; Pickering v. Busk, 15 East, 38 (a case which has been thought to go quite far as to what would constitute an implied authority to sell) ; Loving Publ. Co. v. Johnson, 58· Tex. 273 (4 S. W. 532). Some of these authorities apply the rule in favor of creditors as well as bona fide purchasers.

Under our present law in regard to the execution of contracts of conditional sale (codified in §2776 of the Civil Code), it is provided as follows: "Whenever personal property is sold and delivered with the condition affixed to the sale, that the title thereto is to remain in the vendor of such personal property until the purchase-price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as·against third parties, shall be evidenced in writing, and not otherwise. And the written contract of every such conditional sale shall be executed and attested in the same manner as mortgages on ,personal property; as between the parties themselves, the contract as made by them shall be valid, and may be enforced, whether evidenced in writing or not." By section 2777, conditional bills of sale are required to be recorded within thirty days from their date. This law provides for the making of a sale with reservation of title in the vendor until the purchase-money shall have been paid, and

that such contracts may be good not only between the parties but also against third parties, even innocent purchasers without actual notice, if they are executed and recorded in accordance with the statute. It does not provide generally for affecting the world with notice of all contracts of bailment, agency or partnership. A contract for the retention of title in a vendor until payment, though the possession of the chattel is delivered to the vendee, normally contemplates a lack of authority in the vendee to sell until payment, at least to sell more than such interest as he has. Authority to sell the entire title to a third party is inconsistent with its retention by the vendor. Where, therefore, a vendor, who reserves title until payment, confers upon his vendee the power to sell the chattel, he confers a power to destroy his retention of title.

Can a vendor of personalty, who retains title until payment of the purchase-money, authorize the vendee to sell all or a part of the property, and impose upon the purchaser the duty of seeing that he is paid the proceeds of the sale? And will it bind a bona fide purchaser, without notice, from the original vendee, if such a provision is inserted in and recorded as a part of the contract of conditional sale? In *Guill* v. *Northern,* 67 *Ga.* 345, a deed conveyed land to the wife of the grantor for her use for life, together with her children, and provided that at her death it should be divided among the children. It contained a power in the wife, "at any time in her discretion, to sell and convey the said property by deed, provided the proceeds of such sale are invested in other real estate for the uses expressed." It was held that a bona fide purchaser from the wife acquired a good title, and was not bound to see to the application of the proceeds. In *Tucker* v. *Mann,* 124 *Ga.* 1003 (58 S. E. 504), one person executed to another a promissory note which contained a clause conveying to the payee the title to a certain mule as security. The payee had the note duly recorded. Before it was fully paid, he authorized the debtor to sell the mule and turn the proceeds of the sale over to him. The debtor sold the mule, but failed to pay the proceeds to the creditor, and the latter brought an action of trover against the purchaser. The court charged that if the plaintiff gave the maker of the note permission to sell the mule, coupled with the condition that the maker was to pay him the money received from the sale, and the defendant bought the mule in good faith without knowledge of

this condition, then the plaintiff could not recover; and that the defendant would not be required to see that the condition was complied with, and would get a good title to the mule regardless of it. This court held that the charge was not erroneous, and that, the evidence showing the fact as stated, a verdict for the defendant was proper. It will be seen that in the case of *Guill* v. *Northern,* supra, the recorded deed included the power of sale and conveyance, "provided" the proceeds should be reinvested. But this attempt to place the burden of seeing to the reinvestment upon the purchaser was held not to accomplish that result. In the case of *Tucker* v. *Mann,* supra, the·recorded contract, in the nature of a bill of sale to secure payment of a debt, contained no power of sale at all. The debtor therefore had no authority to make any sale except such as was given him outside of the writing. The creditor undertook to make the authority to sell conditional upon his receiving the money. But this court held that, as against a bona fide purchaser without notice, he could not do so. In the case before us the effort was made to authorize the vendee in a conditional sale to prepare the lumber and carry it to a distant market and there sell it, but to impose on the purchaser substantially the duty of seeing that the original vendor received the proceeds. This was not stated in so many words, as in the two cases above cited, but the effort was made to accomplish the same result by saying that the vendees under the conditional sale might sell to a buyer who would make the check payable to the original vendor. The law does not contemplate that one who reserves title as security can authorize his vendee to sell the property, but charge a bona fide purchaser without notice with the duty of seeing that he receives the proceeds; nor does the record of the contract of conditional sale convey notice to purchasers under the original vendee of any such duty or impose it upon them. If McNatt could, by inserting such a provision in his contract, make the validity of the title acquired by purchasers under McBride and Peterson depend on their making payment in the form of a check to him, there would seem to be no reason why he could not say that they would acquire title if they made payment in gold, or in bills of the denomination of one hundred dollars, or in any other form which he might think likely to reach him through the hands of the vendees whom he had authorized to make the sale.

It also appears from the evidence that McNatt did not require of McBride and Petersen a strict compliance with this portion of the agreement, even as between themselves, but recognized drafts or checks not payable to him as sufficient in sales of other portions of the lumber. It may be a question as to whether he did not waive a strict compliance even as between him and his vendees. Whether Clarke Brothers were bona fide purchasers without notice, aside from the mere record of the contract, is a question of fact, and we deem it best to return the case for a trial upon the issues, under proper instructions from the court.

*Judgment reversed. All the Justices concur.*