### 3636.   COBB *v.* THE STATE.

1. Though the instruction to which exception is taken might be subject to criticism if read apart from its context, still the charge of the court upon the subject of reasonable doubt, when considered as a whole, was full and fair, and not in any wise likely to mislead the jury. The trial judge has the right to make plainer by definition, if he can, the phrase "a reasonable doubt," and it is not error to inform the jury that the term does not include any doubt which is capriciously or arbitrarily created, or which may not arise from consideration of the evidence.

(*a*) Where the judge gives in charge to the jury the statute in regard to the defendant's statement to them, he is not required, in the absence of a timely request, to present a theory dependent upon the statement, or to refer to the statement in charging upon the effect of the evidence as the jury may find it to be true.

2. The court properly instructed the jury that statements of a deceased

person are not to be considered as dying declarations, unless the jury are satisfied not only that the declaration was in articulo mortis, but also that the declarant was conscious that he was dying.

3. There being testimony which would authorize the conviction of the defendant of the offense of murder, it was not error for the court to define to the jury both express and implied malice.

4. The instruction upon the law of involuntary manslaughter in the commission of a lawful act without due caution and circumspection was pertinent and correct.

5. Inquiry as to whether particular sayings constitute a part of the res gestæ of the transaction turns on the particular circumstances of each case, and is directed rather to the spontaneity of the events related, considered as a part of the occurrence under investigation, than to the precise time which may have elapsed between the main fact and the statements made in reference to it.

6. Though the court erred in admitting the testimony complained of, the fact that the jury found the defendant guilty only of involuntary manslaughter conclusively evidences that the error was not injurious to the accused. The fact that a witness might at some time prior to the trial have made in effect the same statement of facts as that sworn to by him as a witness does not tend to corroborate or sustain his testimony when there has been an attempt to impeach him by testimony as to contradictory statements made by him, and can not properly be used to reinforce his testimony. However, in the present instance the error is immaterial, because it is apparent that the impeachment of the witness was completely successful.

DECIDED APRIL 16, 1912.

Conviction of manslaughter; from Mitchell superior court—Judge Frank Park. July 3, 1911.

*E. E. Cox,* for plaintiff in error.

*W. E. Wooten, solicitor-general, F. A. Hooper,* contra.

RUSSELL, J. The plaintiff in error was indicted for murder, and convicted of involuntary manslaughter in the commission of a lawful act without due caution and circumspection. Upon the trial he did not deny the killing, but his statement would have authorized the conclusion that the homicide was a pure accident. There was also some evidence supporting his theory of the case; and, of course, if this testimony and his statement to the jury had been credited by them, an acquittal should have resulted. There is also evidence in the record which fully supports the theory that the death resulted from the discharge of a gun lawfully in his hands, which he was handling in a careless and reckless manner, but without any intention of killing the deceased, or of discharging it. Evidently the verdict was based upon their belief that this testimony represented the truth of the transaction, for there was

testimony from one witness to the effect that the accused deliberately pointed, aimed, and discharged his gun into the body of the deceased coincidentally with publicly proclaiming deliberately his intention to kill her; and, of course, if the jury had believed this witness, a verdict of murder would have been demanded. We say that the defendant, under the testimony last mentioned, must necessarily have been convicted of murder, because, in addition to the testimony as to the killing itself, there was testimony as to motive and previous threats which would have fully authorized the jury to conclude that the killing was the result of deliberate and cold-blooded forethought.

We make this much reference to the evidence for the reason that there are certain assignments of error which are well taken, yet, in our view of the record as a whole (and especially in view of the verdict actually rendered), are not sufficiently material to effect a reversal of the judgment refusing a new trial. We do not subscribe to the doctrine that in any criminal case a defendant can be held to be so manifestly guilty as not to be entitled to the right of a fair and impartial trial, or so guilty as that he should be deprived of any substantial right. We merely adhere to the rule that while injury will ordinarily be presumed to result from error, still injury as well as error must appear, before it can be said that the refusal of a new trial, in a case in which the evidence authorizes the verdict rendered, although there is conflict in the testimony, is reversible error. And in a case in which it is perfectly manifest that the only serious error in no wise affected or contributed to the finding of the jury, the existence of the error becomes wholly immaterial. Passing for the present the general grounds of the motion for a new trial (which was overruled), for the reason that they will in this case be necessarily dealt with in the consideration of the special assignments of error, we will deal with the grounds of the amendment to the motion for a new trial in their order.

1. Exception is taken to the following excerpt from the charge of the court: "The burden is upon the State to rebut the presumption of innocence, and to show by evidence that he is guilty, before you would be authorized to return a verdict against him; and the evidence must be sufficiently strong to satisfy the minds and consciences of the jurors, beyond a reasonable doubt, of his

guilt, before they would be authorized to convict the defendant. . . While this is the rule, and is founded on justice and reason, it must not be understood by the jury that after the consideration of the evidence, the existence of any doubt or a doubt of any degree in the minds of the jury is sufficient to authorize the return of a verdict of not guilty." This instruction was immediately followed by instructions that "While no person can be legally convicted without plain and manifest proof of guilt, yet moral and reasonable certainty is all that can be expected or is attainable in legal investigations, and in deciding whether the evidence is legally sufficient to show guilt, the true question is not whether it be possible that the conclusion at which the testimony points may be false, but whether there is sufficient testimony to satisfy the minds and consciences of the jurors beyond a reasonable doubt. The reasonable doubt of the law is one that grows out of the evidence, or the lack of evidence adduced upon the trial, and leaves a reasonable mind wavering and unsettled, not satisfied from the evidence. The juror can not create a doubt for himself and act upon it. He can not raise an artificial or captious doubt in order to acquit. The doubt should be real and honestly and fairly entertained, after all reasonable effort to find out the facts.". It will be seen that these instructions are so full as to relieve the excerpt first quoted from the criticism that its language is so vague and indefinite and subject to misconstruction by the jury as to lead to the belief that they were hampered in their right to discharge the accused though they may have had a reasonable doubt as to his guilt. The instruction to the effect that it must not be understood that after consideration of the evidence, the existence of any doubt or doubt of any degree in the minds of the jury is sufficient to authorize the return of a verdict of not guilty, when standing apart from its context, is somewhat inapt and contradictory to the usual rule; still when the instructions upon this subject are considered as a whole, it is very plain that the judge was correctly instructing the jury that while a mere fanciful doubt would not authorize an acquittal, they should acquit the defendant if they entertained a reasonable doubt of his guilt; and thus the instruction falls in the same class as the instruction approved by the Supreme Court in *Jordan* v. *State,* 130 *Ga.* 406 (1) (60 S. E. 1063). See, also, *Vann* v. *State,* 83 *Ga.* 45 (9 S. E. 945); *Fletcher* v. *State,* 90 *Ga.* 468 (17 S. E. 100).

The further complaint urged as to this instruction, that the court erred in failing to charge in this immediate connection that a reasonable doubt may arise from the prisoner's statement, is controlled by the ruling in the *Jordan* case, supra, as well as by the ruling in *Walker* v. *State,* 118 *Ga.* 34 (44 S. E. 850). As has been several times held by this court, it is not necessary to reiterate instructions when once correctly given, even though the omission to give the instruction at all might be gross error; and for that reason, in the absence of request, it was not necessary for the judge to instruct the jury, in connection with his charge upon the subject of reasonable doubt, that a reasonable doubt might arise from the manner or conduct of a witness in testifying, or from the credibility of the witness, or from other facts and circumstances connected with the case, these matters having been very fully and fairly covered by another portion of his instructions.

Our view of the above-mentioned assignment of error disposes also of the exception to the following instruction: "I charge you that for your verdict to be a legal and proper one, it must be founded on the evidence in the case, yet in this connection I give you another rule which may or may not, as you must determine, affect your finding. In all criminal trials the prisoner shall have the right to make to the court and jury such statement in the case as he may deem proper in his own defense. It is not made under oath, and it shall have such force only as the jury may think right to give it. You may believe it in preference to the sworn testimony in the case." It is contended that this was not a correct statement of the law, that it was confusing to the jury, and excluded from their consideration the statement of the defendant, and denied to them the right to find a legal and proper verdict upon it. It seems clear to us that the jury was not confined to the evidence, when the judge, after correctly informing them that their finding must be based upon evidence (in accordance with their oaths, which require their verdict to be according to the evidence), instructed them that nevertheless they might give preference to the statement of the defendant, over all the evidence in the case. The same point was ruled adversely to the plaintiff in error in *Jordan* v. *State,* supra.

2. The court's instructions as to dying declarations are approved as a correct, full, and explicit statement of the law upon

that subject. No declaration can be properly denominated a dying declaration, and be as such considered by the jury, if at the time it was made the declarant was not in articulo mortis, or, even though in fact in a dying condition, was not conscious of his true condition. For the unsworn statement of a decedent to be admissible in evidence as a dying declaration, two essential facts must concur. The declarant must be actually in a dying condition, and he must be convinced that he is dying. The existence of both conditions is requisite to create the presumption that the solemnity of the consciousness of impending dissolution was equivalent to the sanctity of a witness's oath.

The complaint is made, as to the instructions upon dying declarations, that the jury were thereby excluded from determining from the statement of the defendant whether or not a dying declaration was made by the deceased, and that the charge of the court denied the jury the right to believe the defendant's statement as to dying declarations, if they found from the evidence that the deceased had hope or expectation of living. In the absence of a request, the judge, after having charged fully the law as to the defendant's statement, with reference to the case as a whole, was not required to refer again to the statement, or tell the jury that they were to consider it in determining whether the declarations of the deceased were in fact dying declarations. The instruction of the court to the effect that the statement of the deceased should be disregarded by the jury, if they found, from the evidence, that the deceased had hope or expectation of living at the time she made the statement, was correct. It is only when presumably all hope of living has been abandoned by the declarant that his unsworn statements can be received as evidence.

3. There is no error in the instruction of the court upon the subject of malice, nor did the court err in defining express and implied malice. The defendant was indicted for murder, and there was evidence which would have authorized his conviction of that offense, for the witness Lonnie Batchelor testified that he heard the defendant threaten the deceased, and saw him take deliberate aim and shoot her down without any apparent cause or provocation; and there was testimony from other witnesses as to previous threats, and evidence of a previous attempt upon the life of the deceased by the defendant.

4. It is complained that the court erred in charging upon the subject of involuntary manslaughter in the commission of a lawful act without due caution and circumspection, because, as insisted, that offense was not involved in the case, under the evidence submitted, and because the charge on that subject was incorrect. The testimony of more than one of the witnesses introduced by the defendant authorized the defendant's conviction of the offense of involuntary manslaughter in the commission of a lawful act without due caution and circumspection. Paul Caldwell and Gentleman Brown, introduced by the defendant, both testified that they were present at the time of the shooting of Clara Widner, the deceased, and that the defendant had his gun in his hand while he was laughing and talking, and was standing up, swinging his gun up and down, when it went off and shot the deceased. The record does not show how he was swinging the gun, or the position in which he held it at the time it was discharged, but it appears that these witnesses illustrated to the jury the exact position in which he held it. It is undisputed that he knew the gun was loaded, and the testimony shows that though he was lawfully in possession of the gun, he was absolutely careless and reckless in handling it; and for this reason the case falls clearly within the ruling in *Austin* v. *State,* 110 *Ga.* 48 (36 S. E. 52, 78 Am. St. R. 134), following rulings in *Pool* v. *State,* 87 *Ga.* 526 (13 S. E. 556), and *Burton* v. *State,* 92 *Ga.* 449 (17 S. E. 99). It appears that the jury believed these witnesses, and that the death of Clara Widner resulted from the discharge of a gun in the hands of the defendant, and that while, according to the testimony of his witnesses, he had no intention to kill, nor any intention to discharge the gun, yet the death was due not to accident, but to his criminal, though unintentional, negligence; and the jury, while not accepting the defendant's statement, disregarded testimony which would have authorized his conviction of the offense of murder. Certainly, in the state of the evidence in the record, it would have been error for the judge not to have charged the law of involuntary manslaughter; and his instructions were in accord with the ruling in the *Austin* case, supra.

5. It can not be said that the court erred in excluding the testimony as to the defendant's statement made several minutes after the shooting, in reference to his lack of intention to discharge

the gun, and to the effect that the shooting was accidental. As ruled in *Thornton* v. *State,* 107 *Ga.* 683 (33 S. E. 673), the issue as to whether sayings constitute a part of the res gestæ of any transaction is often more properly determined by the circumstances of the particular case than by the time which may have elapsed. The inquiry is rather into events than into the exact amount of time which may have passed. Is it an event happening naturally and spontaneously as a part of the occurrence under investigation? Tested by this rule, we do not think the judge erred in excluding the testimony. If it had not been an "afterthought," it seems likely that it would have been made as soon as the witness appeared upon the scene. Furthermore, even if the court misjudged the circumstances, the accused was not hurt by the ruling upon this testimony, for the reason that the excluded remark was proved by other witnesses, without objection, these witnesses testifying that it was made to them immediately on the heels of the shooting.

6. We entertain no doubt that the court erred in permitting testimony to the effect that a witness, Lonnie Batchelor, whom it was sought to impeach by proof of contradictory statements, had, upon other occasions, made the same statements as those testified to by him upon the trial, and statements to the effect that his previous contradictory statements were false; the evident purpose of this testimony being to corroborate his testimony. The fact that a witness might at some time prior to the trial have made in effect the same statement of facts as that sworn to by him as a witness does not tend to corroborate or sustain his testimony when there has been an attempt to impeach him by proof of contradictory statements made by him, and can not properly be used to reinforce his testimony. However, the error in the present instance is immaterial, because it is apparent that the impeachment of the witness was completely successful. If this testimony, erroneously admitted, had served its purpose, and the testimony of Lonnie Batchelor had been corroborated thereby and sustained in the opinion of the jury, the result of the trial must necessarily have been the conviction of the defendant of the offense of murder. The fact that the jury found the defendant guilty only of involuntary manslaughter is demonstrative of the fact that they wholly disregarded the testimony of the witness whose veracity it was sought to sustain by the evidence erroneously admitted. The verdict rejected the

evidence which it was sought to reinforce, and consequently, as ruled by this court in *Hall* v. *State,* 8 *Ga. App.* 748 (3) (70 S. E. 211), a new trial will not, be granted, although the error is apparent. It is to be presumed prima facie that a manifest error is injurious, but when it affirmatively appears that an error has not resulted in injury, a new trial will not be granted for that error. "In determining whether error has resulted in injury, the court may look to the record as a whole." *Hall* v. *State,* supra.

7.  A very careful review of the record in this case convinces us that the finding of the jury is fully supported by the evidence, and that the plaintiff in error has no cause for complaint.

*Judgment affirmed. Pottle, J., not presiding.*