[No. 24413. Department Two. July 27, 1933.]

BRATNOBER COMPANY, *Appellant,* v. MAUK SEATTLE LUMBER COMPANY, *Respondent,* STONEAYLER LUMBER COMPANY *et al., Defendants.*[1]

*Edwin H. Flick* and *Herald A. O'Neill,* for appellant.

*Bundy & Swale,* for respondent.

[1]Reported in 24 P. (2d) 89.

TOLMAN, J.—In December, 1928, the appellant, Bratnober Company, being the owner of a certain saw mill plant and a quantity of standing timber, entered into an executory conditional sales contract to sell the same to the predecessor in interest of defendant Stoneayler Lumber Company. The written contract, which was never filed for record, among other things provided that the purchase price of forty thousand dollars should be paid as the timber was cut, manufactured into lumber and marketed, at the rate of $2.50 per thousand on all lumber as shipped; that a copy of invoices should be sent to the vendor in the contract, "and that, when payment is made by customer, that the payment per M as above mentioned shall be paid direct to party of the first part."

The contract by its terms undoubtedly was sufficient to reserve title in the vendor to the mill and its accessories and to the standing timber, but title to the manufactured lumber is by the terms of the contract left to inference or deduction. Since we are convinced that the judgment must be affirmed on another ground, we pass this point in the interest of brevity.

Stoneayler Lumber Company, having succeeded to the rights of the vendee named in the contract, went into possession and proceeded to manufacture lumber under the terms of the contract.

Finding a need for financial assistance, it contracted with respondent Mauk Seattle Lumber Company, a corporation, to advance money to it at the rate of twelve dollars per thousand on all lumber cut and piled in the yard for air drying, giving a chattel mortgage to Mauk Seattle Lumber Company on all such lumber to secure such advances. The chattel mortgage was duly filed for record, and it is not attacked as to its form or sufficiency other than as hereinafter suggested. Considerable sums were advanced, some lum-

ber was shipped, payments were made on account of advances from the proceeds of sales, and at the time this action was brought there was owing to Mauk Seattle Lumber Company under the chattel mortgage some $8,200, and a considerable quantity of lumber covered by the chattel mortgage still remained in pile in the yards.

The pleadings seem to be little guide to the particular theory upon which relief was sought by this action, but considering the pleadings amended to conform to the proof, the plaintiff seems to have sought to recover its stumpage payments from the Mauk Seattle Lumber Company on some one of several grounds, either (1) that Mauk Seattle Lumber Company had directly contracted to pay the stumpage in addition to the cash advance of twelve dollars per thousand; or (2) that title to the lumber was reserved in the plaintiff and its rights were, in any event, superior to those of a subsequent encumbrancer; or (3) that Mauk Seattle Lumber Company made the advances with actual knowledge of the plaintiff's rights, and is therefore bound by that knowledge.

The trial court denied any relief, and the plaintiff has appealed from a judgment dismissing its action.

Little need be said upon the first two questions which are apparently raised. The appellant failed to establish by a preponderance of the evidence any agreement on the part of respondent Mauk Seattle Lumber Company made for its benefit to pay the stumpage to it. The conditional sales contract was not recorded, and the second question suggested is therefore merged in the third.

On the third question, as to the advances having been made with actual knowledge, the burden of proof, of course, rests upon the appellant. We have examined with care all of the testimony upon this

subject. The managing officer of the Stoneayler Lumber Company, who conducted all of the negotiations and upon whose testimony appellant chiefly relies, did largely, by suggestions, inferences and conclusions, seek, almost too willingly, to establish the fact of actual knowledge on the part of the Mauk Seattle Lumber Company. On the other hand, while there are some inconsistencies in the testimony to the contrary, that testimony, including its explanations of the apparent inconsistencies and supported by the greater probability in its favor, carries to us a far more convincing force.

We cannot find from all of the evidence in the case that Mauk Seattle Lumber Company, when it made the advances, knew anything more than that the Stoneayler Lumber Company had purchased or was purchasing the mill and timber from the Bratnober Company, and had agreed to pay $2.50 per thousand on all timber cut and manufactured into lumber. We are satisfied that it had no actual knowledge of any attempt to secure the stumpage by reservation of title to the manufactured lumber or of any contract which would give preference rights thereon to the stumpage claim.

■ Was such knowledge as Mauk Seattle Lumber Company then had sufficient to bind it and subordinate its claim to appellant's stumpage rights?

The authority of the vendee, under such a contract as we have here, to sell the manufactured product and pass good title to the purchaser must be either actual or apparent. Actual authority may be either expressly conferred or it may be implied. Implied authority may arise from facts and circumstances which authorize the inference that actual authority was, in fact, given. Here, we have authority to sell expressly conferred by the terms of the contract, but with the limitation that payment by the purchaser shall be

made direct to the original vendor. As we have already seen, the purchaser for value had no actual knowledge of the limitation.

If there was no actual authority, then clearly there was implied authority to sell arising from the placing of the Stoneayler Lumber Company in possession with the indicia of title and permitting it to deal with the lumber produced without interference and without notice to the purchaser of the secret limitation upon the actual authority to sell.

The general rule seems to be that, if a situation exists which creates apparent authority in the conditional vendee to resell and he does resell to a bona fide purchaser in good faith and for value, then the original vendor is estopped from asserting his rights under the contract. *Gump Investment Co. v. Jackson,* 142 Va. 190, 128 S. E. 506, 47 A. L. R. 82. (See especially the exhaustive note which follows, citing many cases.)

The trial court seems to have relied chiefly upon the case of *Clarke Bros. v. McNatt,* 132 Ga. 610, 64 S. E. 795, 26 L. R. A. (N. S.) 585, which is very apt because of the similarity in the facts.

Appellant, as we understand its counsel, does not take issue on this view of the law if, in fact, respondent was a purchaser or encumbrancer for value and without actual knowledge. As we have so found from the evidence, it seems unnecessary to pursue the inquiry further.

The judgment is affirmed.

BEALS, C. J., STEINERT, MAIN, and BLAKE, JJ., concur.