37003. WILLIAMS, Revenue Commissioner *v.* SUPERIOR PINE PRODUCTS COMPANY.

Decided March 10, 1958—Rehearing denied April 3, 1958.

*Eugene Cook, Attorney-General, Ben F. Johnson, Jr., Hugh Gibert, Deputy Assistant Attorneys-General,* for plaintiff in error. *Smith, Tillman & Brice, B. Lamar Tillman,* contra.

GARDNER, Presiding Judge. The defendant relies on Code (Ann.) § 92-3119(d) which reads as follows: "There shall be included in 'gross income' of a taxpayer, as defined in § 92-3107, gains from the sale or exchange of 'capital assets', as hereinafter defined, and in the deductions, of a taxpayer, as defined in § 92-3109(d) . . . (1) (A) The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business) but does not include—1. Stock in trade . . . or property held . . . primarily for sale to customers in the ordinary course of his trade or business; 2. Property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in § 92-3109(f), or real property used in his trade or business."

The defendant also relies on Code (Ann.) § 92-3119(d) (1) (K) (2) which reads as follows: "Percentage taken into account.—In the case of a taxpayer, if for any taxable year the net long-term capital gain exceeds the net short-term capital loss, 50 percent of the amount of such excess shall be a deduction from gross income."

Code (Ann.) § 92-3122 reads: "The executive order of the Governor, dated May 20, 1952, as amended January 6, 1953, suspending the collection of income tax on corporations which is due by a failure to provide corporations the deduction from gross income of 50 percent of the excess of net long term capital gain over a net short term capital loss as is provided an individual, required to be paid under the Georgia Income Tax Act as amended by Georgia Laws approved February 15, 1952, is

hereby ratified, approved and confirmed. All corporation income taxes which have accrued under said Act as amended since February 15, 1952, or may hereafter accrue by failure to provide the same deduction for a corporation as is provided for an individual as provided in said order of the Governor and while said order is effective and/or during the regular session of the General Assembly in 1953, are hereby remitted, cancelled and annulled."

The defendant relies also on Code (Ann.) § 92-3119(g) which reads as follows: "In the case of a sale or exchange of 'other assets' used in a trade or business, the following rule shall apply . . . (2) In the case of a gain and the property used in the trade or business has been held longer than six months, only 50 percent of the gain shall be taken into account."

The determination of whether the income here involved is regular income or capital gain depends not on the interpretation of the law but on the interpretation of the contract. Is the intention of the parties to sell and buy capital assets of the seller or is the intention to lease the land for sixty years for the purpose of pine-tree farming by the tenant? We think that the answer is unquestionably the latter. The criterion in ascertaining intent here is whether as a result of the activities of the tenant the capital assets of the owner or seller are depleted by the tenant in the course of its performance of the contract. The terms of the contract show without question that the assets, principally pine trees fit for pulpwood purposes, are not to be depleted but replaced and replacements nurtured through the years so that at the end of the term of the lease the status of the lands insofar as pulpwood trees are concerned would not be materially different from their status at the time of the contract. The Federal cases cited which involve the selling off of trees, without provisions for replacement over a period of years are so clearly distinguishable from this case that further discussion is unnecessary. The Federal cases most similar to this one hold the income to be regular income and these cases are not as strong on their facts in favor of regular income as the facts in this case because the element of continuous replacement and resupply of capital assets is not present in those cases. The cases referred to are: Burnet *v.* Harmel, 287 U.S. 103, 106 (53 Sup. Ct. 74, 77 L. ed. 199); Albritton *v.* Commissioner, 24 T. C. 903. The fact that the rental

is based, over and beyond a minimum rental, on the number of cords of wood cut, is not controlling. The gravamen of the issue is whether capital assets are depleted. We think that the intention is that they should not be. The fact that Section 117(k) of the Federal Internal Revenue Code of 1939 was not enacted as the law of Georgia is immaterial so far as this case is concerned. It reads in part as follows: "In the case of the disposal of timber or coal (including lignite), held for more than six months prior to such disposal, by the owner thereof under any form or type of contract by virtue of which the owner retains an economic interest in such timber or coal, the difference between the amount received for such timber or coal and the adjusted depletion basis thereof shall be considered as though it were a gain or loss, as the case may be, upon the sale of such timber or coal . . ." This section was not intended to refer to a lease such as we have in this case, but was to remove inequities existing because of situations which arose in an owner's selling off of timber, where there was no provision for farming timberlands or replacing depleted lands. Insofar as this case is concerned the law would be the same if Section 117(k) of the Federal Internal Revenue Code was included in the Georgia law. We agree with the taxpayer's argument on this point. There may be one or two more reasons why the income involved is regular income, but what we have said above is sufficient, it being in our opinion the most compelling reason for our conclusion.

The court erred in reversing the judgment of the Commissioner.

*Judgment reversed. Felton, C. J., Carlisle, Quillian and Nichols, JJ., concur. Townsend, J., dissents.*

TOWNSEND, Judge, dissenting. 1. I want to clarify at the beginning which statutes and decisions I consider to be authority on this question. Recognizing that the capital gains provisions of the Georgia Code embodied in Code (Ann.) § 92-3119 (the provision under consideration here) were taken from the Federal Internal Revenue Code, I think Federal decisions based on the same provisions in the Federal Code may be taken as persuasive authority in the absence of Georgia cases. One section which was not included in the Georgia law is 26 U.S.C.A., 1954, § 631, providing that in all cases of the disposal of timber held more than six months by the owner prior to such disposal "under any

form or type of contract by virtue of which the owner retains an economic interest in such timber" the resulting compensation shall be considered a capital gain. Federal cases under this Code section should accordingly be excluded from consideration. Since both the State and Federal Codes allow the capital gains tax on capital assets, held more than 6 months and both define capital assets in the same way, Federal decisions are relevant on the question of whether or not particular property is a capital asset, but they are not relevant in construing a contract to determine whether the owner retains an economic interest in the timber which is its subject matter, which would include in some instances determining whether or not there was a sale. .

Capital assets held more than 6 months are subject to the preferential tax provisions under Code (Ann.) § 92-3119 (d) (1) (k) (2) and "other assets" under Code (Ann.) § 92-3119 (g) (2). Exceptions under subdivisions (d) (1, 2) are that the property shall not include stock in trade of a kind which would properly be included in inventory; property held for sale to customers in the ordinary course of business; property subject to allowance for depreciation, or real property used in the trade or business. "Other assets" shall not include under subdivision (g) (4) property held for resale which would properly be includable in inventory. It is stipulated here that Superior Pine Products Company acquired and used the timberland for many years as a source of turpentine and in connection with their chemical manufacturing business; that prior to 1947 they had ceased turpentine operations; that the land embraces about 208,000 acres; that in 1947 they entered into the contract in question with St. Regis Paper Company: that the defendant has wholly ceased operations and has only one employee whose duties are in connection with the operation of this contract. The trade or business of the taxpayer was the manufacture of chemicals and it has never engaged in the timber-cutting business. Carroll v. Commissioner, 70 Fed. 2d 806, and U.S. v. Robinson, 129 Fed. 2d 297, are authority for the proposition that an executory contract for the sale of timber as it is removed at various times, which timber is owned incidentally to the management of some other business is not "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." I think

the facts of this case demand a finding that the timber contracted to be sold to only one outlet as the same matures does not fall within any of the exceptions to the definition of "capital assets", all the facts showing that the taxpayer was engaged in another kind of business and that it has ceased its regular course of business entirely and is presently engaged only in selling or conserving its capital assets.

2.  The more difficult question posed by this record is whether the remuneration fixed in this contract constitutes "gains from the sale of" such assets.  The contract gives to the St. Regis Paper Company certain rights, and imposes on it certain responsibilities, of which the following may be mentioned: The company may cut off the tract up to the average annual growth each year; it may use the buildings on the land and build roads, railroads, canals, houses and the like; it has grazing, game, and turpentine rights; it must restock and replace timber cut or burned out and be liable for a minimum cutting charge each year. The taxpayer may use the land for any purpose not inconsistent with the above; it is entitled to receive a sum of money determined by the amount of timber cut each year (stated amounts of turpentining being the equivalent of stated quantities of timber); it is entitled to a minimum sum of $150,000 each year whether that much timber is cut or not, subject to the purchaser's privilege of "overcutting" in succeeding years up to such minimum.  The improvements must be returned at the end of the period in the same condition as accepted subject to normal wear and tear.  The contract denominates itself a contract of sale and contains the express provision that title shall not pass until after severance of the timber.  It is contended that all of these provisions show an intent between the parties to *lease* the land to St. Regis Paper Company for the purpose of farming timber. In my opinion, to so construe the document would be violative of the cardinal rule of construction which is to seek the intention of the parties.  So examining the instrument, it is clear that all substantial rights acquired by the purchaser other than the right to purchase the timber itself are merely incidental to this end. The price to be paid depends entirely upon the amount of timber cut, subject to a certain minimum in each year.  No substantial grazing land could be built up where the purchaser is under the

duty to replace the annual timber growth. Roads, railroads and canals are incident to the business of removing the timber. The buildings house the workmen. Title to the standing timber is retained by the seller until severed. The right of possession in the land of the purchaser of the timber is for very limited purposes, almost all of which center around its business of cutting and removing the logs. Since the purchaser of the timber is under the liability of replacing burned-out timber, a fair construction of the reasons contained in the contract for giving it the grazing and game rights is so that it may be put in position to better control the premises and protect itself against fire. Nothing in the record indicates that the St. Regis Paper Company is engaged in any business involving grazing or game, and nothing in the contract indicates that any of the income of the taxpayer is derived from this source.

Had the contract been one under which the purchaser was entitled to cut all the trees and pulpwood at a single time, thus denuding the land and subjecting it to the injurious effects of drouth, flood and erosion, there is no contention but that the transaction would be a sale, and the sale of a capital asset. I do not think the seller should be penalized because he reaches the same result, over a longer period of time, thus protecting the land and trees from the injurious results of complete destruction of the forest. "A contract of sale in regard to timber which is attached to the soil, but which is presently to be severed therefrom and converted into personalty before the title is to pass to the purchaser, is an executory sale of personalty, and not of an interest in land." *Clarke Brothers* v. *McNatt*, 132 *Ga.* 610 (3) (64 S. E. 795, 26 L. R. A. (NS) 585). The character of such a sale is not, in my opinion, changed either because it is effected in instalments, or because other rights necessary and incident to the purchase are conveyed in the same instrument. It was held in Miller *v.* Standard Nut Margarine Co. of Florida, 284 U.S. 498 (52 Sup. Ct. 260, 76 L. ed. 422) that taxing statutes are not to be extended by implication beyond the clear import of the language used. Under our general law I am convinced that this instrument cannot be construed other than as a contract for the sale of personalty, the sale becoming effective at the time title passes upon the cutting of any lot of timber. The taxing

statute speaks of a "sale of capital assets." Since the taxpayer was not in the business of selling timber, the standing timber must be construed as a capital asset. Accordingly, the taxpayer is entitled to have the proceeds of the sale treated as a capital gain, the asset having been held longer than six months prior to the sale. Also, this being in my opinion an executory sale, timber which had not on the date of the contract come into existence will, before it is sold under the contract and before it is severed from the realty, have been in the possession of the taxpayer more than six months.

3. "An agreed statement of facts entered into for the purpose of dispensing with proof on some or all of the issues is conclusive, as long as it remains in the case." *Walden* v. *Camp*, 206 *Ga.* 593, 602 (58 S. E. 2d 175) ; *United States Fidelity &c. Co.* v. *Clarke*, 187 *Ga.* 774 (3) (2 S. E. 2d 608).; Code § 38-114. The stipulation of the parties in the present case is clearly an admission by both parties that the transactions constituted sales, and not a lease. The stipulation contains the following statements: "Other than the *sales to St. Regis Paper Company* under and pursuant to the said contract, the taxpayer has sold no timber since 1947. . . The receipts from St. Regis Paper Company of the *purchase price of timber sold* under and pursuant to the contract amounted to $413,835.00 in 1952 . . . the taxpayer treated all of the above mentioned receipts *from sales of timber* as receipts from the sale of capital assets. . ." Since both sides have denominated the transaction which is the subject matter of the contract as a sale of timber, I do not think this court is justified, for this additional reason, in treating it as a lease of timber lands for the purpose of the lessee growing timber thereon.

4. The legislative history back of the enactment of section 117 (k) of the Federal Internal Revenue Code of 1939 (Section 631 of the Federal Internal Revenue Code of 1954) is unquestionably, as pointed out by counsel for the Revenue Commissioner in their brief, a special Federal provision "which gives the proceeds of all timber leases preferential capital gains treatment for Federal income tax purposes." It does so by treating as a capital gain profit from the disposal of timber held more than 6 months under any type contract "by virtue of which the

owner retains an economic interest in such timber." This necessarily includes a timber lease such as the one considered here, if this instrument is to be considered as a lease. Accordingly, the statement in the majority opinion that "insofar as this case is concerned the law would be the same if section 117 (k) of the Federal Internal Revenue Code was included in the Georgia law" is in my opinion inaccurate, and it is manifestly obiter. If such a provision were at some future time to be incorporated in Georgia law, I cannot believe that judicial construction would render it completely inoperative, as this sentence in the majority opinion would seem to indicate.