BALKCOM *et al.* v. THE EMPIRE LUMBER COMPANY *et al.*

1. The lien of a laborer for his wages is not defeated by giving him a negotiable draft which he afterwards indorses and negotiates for value, provided he takes the necessary steps in due time to enforce his lien and enables himself to surrender the draft to the debtor, and does actually produce it and offer to surrender it to the court which is called on to adjudicate upon the existence and enforcement of the lien. If, with the consent and approbation of his indorsee, the laborer has possession and control of the draft, with power to surrender it, his indorsement is virtually cancelled, and the title is at least equitably in him for the purpose of enforcing his lien, he being liable to the indorsee upon account for the returned draft, and not necessarily upon the indorsement.

2. For the price of standing timber purchased by the proprietor of a saw-mill, there is no lien upon the mill and its products under section 1985 of the code. Such timber is realty.

(a) Nor is there any lien under that section for the contract price due a contractor for cutting such timber belonging to the mill-owner and for hauling and delivering the logs at the mill, this work not being embraced in the terms "furnishing saw-mills with timber, logs," etc.

(b) Nor is there any lien under that section in favor of persons who furnished machinery, hardware, implements, tools, etc., such as saws, belting, globe-valves, pinions, couplings, bolts, chains, nails, screws, gauges, augurs, files, wrenches, ax-handles, ropes, etc., etc. These articles are not embraced in the words "any other thing necessary to carry on the work of saw-mills," which follow the words "timber, logs, provisions," because not *ejusdem generis* with the things thus enumerated; but for oil with which to lubricate the mill and machinery there is a lien, this article, like those last enumerated, being consumed in the use, and therefore fairly embraced in the general words above quoted.

(c) In the present case, however, it does not affirmatively appear that any proceeding, either by affidavit or intervention, was commenced to enforce the lien for the oil within twelve months after the debt, so far as chargeable upon the property now in question, became due.

May 2, 1893. Argued at the last term.

Before Judge ROBERTS. Dodge superior court. March adjourned term, 1892.

DELACY & BISHOP, for plaintiffs in error.

CLAUD ESTES, HILL, HARRIS & BIRCH and JOHN L. HOPKINS & SON, *contra*.

LUMPKIN, Justice.

1. This is a branch of the litigation arising over the administration of the assets of the Empire Lumber Company, which resulted in bringing many cases to this court. Among the parties to the original petition for a receiver were a large number of manual laborers who had been employed as such in and about the running of the mill and its machinery, and who set up their liens and insisted upon the priority of the same. All the facts necessary to the validity and enforcement of their liens were admitted, and their claims were allowed by the master except as to certain amounts represented by drafts which had been given to some of the laborers by the lumber company in settlement of their wages. These drafts were indorsed by the laborers respectively holding them, to Lupo Bros. and others, for collection, or for the purpose of borrowing money on them. The parties to whom the drafts were indorsed did advance and loan money on them to the laborers, and forwarded the same for collection, but payment of them was refused and they were returned. They were afterwards, but before the beginning of this litigation, redelivered to the original payees, who are held responsible to the parties to whom they had indorsed the drafts for the amounts advanced upon them. These laborers, having the possession and control of the drafts, offered to surrender them to the court, and had full authority so to do.

Under these circumstances, we think the master erred in disallowing so much of these liens as were represented by the drafts referred to. The mere receipt by a laborer of a promissory note from his debtor will not waive the right of lien. In *Ford* v. *Wilson & Co.*, 85 *Ga.* 109, this court held that no implied waiver of a material man's statutory lien resulted from the acceptance of the promissory note of a third person as collateral security, there being no intimation in the statute

that material men were not to have a lien as well when they took personal security as when they did not. There is likewise nothing in the statute allowing liens to laborers which would make the mere acceptance by them of cumulative security a ground for defeating their liens. According to the principle of the case cited, it would follow incontrovertibly that the acceptance by a laborer of a promissory note from his employer for an amount due the former as wages would not defeat his lien, unless the note was given and received as an absolute discharge and payment of the debt. An actual negotiation and transfer of the note would destroy the lien, this rule being founded upon the theory that the lien creditor, by transferring the note, receives payment in full of his claim. But if he afterwards regains possession of the note before commencing proceedings to foreclose, he is in the same position as if the note had never been transferred at all. Kneeland on Mec. Liens, §142. In 13 Am. & Eng. Enc. of Law, p. 623, it is said that: "Generally, a mechanic's lien is not waived or abandoned by accepting other security, such as a promissory note." See cases there cited upon this subject. Section 1532 of Jones on Liens (vol. 2, p. 414) is directly in point, and reads as follows: " But the taking of the debtor's own note, or other evidence of indebtedness, which does not extend the credit beyond the time within which a lien may be asserted, does not amount to a waiver of the right of lien, in the absence of an express agreement to that effect. If such note is negotiated by the contractor, the lien is lost, unless he regains possession of it in time to enforce the lien. The claimant must produce the note at the trial, or satisfactorily account for its absence, or else the lien cannot be enforced." Applying these authorities, which seem to be sound, to the facts of the present case, which show that the drafts were returned to the laborers, and that their

proceedings to foreclose were begun within the time allowed by law for this purpose, it is clear that the master erred in disallowing the liens for the amounts represented by the drafts, and that the court was wrong in sustaining this part of the master's report. The indorsees of the drafts, by returning them to the laborers and giving the latter the possession and control of the same with full power to surrender them, virtually cancelled the contracts of indorsement. At any rate, the laborers had at least the equitable title for the purpose of enforcing their liens, and their liability to the indorsees is really upon account for the money originally advanced upon the drafts. Certainly, nothing in the facts stated would make them necessarily and absolutely liable upon the indorsements.

2. Darcy, Davis and Green, intervening creditors, claimed, under section 1985 of the code, liens against the lumber company for timber furnished by them to it and its saw-mill. The master disallowed the claims of Darcy and Davis for the reason, as stated in his report, that the evidence showed they did not own the trees from which the logs delivered by them were cut, but simply, as contractors, cut the trees into logs and hauled the same to the mill. The finding of the master as to the facts of this transaction was erroneous, the evidence being conclusive and uncontradicted that these parties did own the trees, and sold them to the company as "standing timber," but it does not appear that these parties cut the trees into logs and delivered them to the mill. The claim of Green was disallowed for another reason, which it is unnecessary to state. The claims of all three of these parties ought to have been disallowed, and the master was right in so doing, although he may not have given the proper reasons for his decisions. The evidence shows that all these claimants sold to the lumber company standing trees as they grew in the

woods. Standing timber is realty, and therefore not embraced in the terms of section 1985 of the code.

Counsel for defendants in error, in open court, expressed their consent to a reversal of so much of the judgment of the court below as approved the report of the master disallowing these claims. This consent was based upon the erroneous finding of fact by the master above indicated. Having shown, however, that these parties, under the facts as they actually appear, are not entitled to a lien, a sufficient reason is thus presented for declining to reverse the judgment in this respect, even were it otherwise proper to do so upon the mere consent of counsel.

H. & C. Erskine and J. E. and M. D. Price claimed a lien for logs furnished by them to the lumber company. The proof shows that the company owned lumber trees standing in the woods, and that these parties, as contractors, cut down the timber and hauled and delivered the logs to the mill. Section 1985 of the code contemplates that persons furnishing saw-mills with timber, logs, etc., shall own the material furnished. Certainly, logs which already belong to the owners of a mill were not included nor intended to be included in the provisions of this section. It is difficult to conceive how a corporation can be *furnished* with a thing which already belongs to it. The contractors furnished the *labor* necessary to convert the standing trees into logs suitable for the purposes of the company's business, but in no sense can they be said to have furnished the logs themselves. The master was therefore right in disallowing the claim of lien of the parties last mentioned, and the court properly sustained his action in so doing.

The Atlanta Rubber Company, and a number of other creditors, claimed liens for such articles, and others of similar character, as are designated in paragraph (*b*) of the second head-note. Their contention was that these

articles were embraced in the words "any other thing necessary to carry on the work of saw-mills," which follow the words "timber, logs, provisions," in section 1985 of the code. We do not think this contention is well founded. The words first above quoted refer, in our opinion, to things of like kind, *ejusdem generis*, as those indicated by the words last quoted. The latter relate to a class of articles which are immediately consumed in their use. Machinery, hardware, implements, etc., while, in point of fact, equally necessary to the carrying on of the work of saw-mills, belong to an entirely different class, possessing, more or less, the elements of permanency and durability. "When there are general words following particular and specific words, the former must be confined to things of the same kind." Suth. Stat. Constr. §268. See, also, other authorities in support of this proposition, cited in *Sanders* v. *State*, 86 *Ga.* 719, 720.

The Standard Oil Company claimed a lien for oil furnished to the lumber company. We think oil for lubricating purposes could be properly included in the same class as that to which timber, logs and provisions belong, it being an article at once consumed in its use. It does not affirmatively appear, however, that the Standard Oil Company, either by affidavit or by intervention, commenced proceedings to enforce its lien for the oil furnished within twelve months after the debt, so far as chargeable upon the property now in question, became due. This company furnished oil to the defendant corporation at its mills at Empire, Ga., and also at Sedden, Ala., and although the amount due for the oil furnished at the mills in this State is shown, it is impossible to ascertain definitely from the evidence when this amount became due, or that it had not been due for more than one year before a proceeding of any kind to foreclose the lien was instituted.

We therefore hold that the master did not err in disallowing the alleged liens for machinery, hardware, implements, etc., or for the oil mentioned, and there was no error by the court in sustaining his report as to these claims. *Judgment reversed in part, and in part affirmed.*