20101. SUPERIOR PINE PRODUCTS COMPANY *v.* WILLIAMS, Revenue Commissioner.

ARGUED JULY 14, 1958—DECIDED OCTOBER 10, 1958—REHEARING DENIED NOVEMBER 7, 1958.

*Tillman & Brice,* for plaintiff in error.

*Wyatt & Morgan, Jackson & Graham, Ford & Houston, Connerat, Dunn, Hunter, Cubbedge & Houlihan, Malcolm Maclean, Bennett, Pedrick & Bennett, E. Kontz Bennett, Young, Hollis & Moseley,* for parties at interest not parties to record.

*Eugene Cook, Attorney-General, Ben J. Johnson, Jr., Hugh Gibert, Deputy Assistant Attorneys-General,* contra.

HEAD, Justice. Our income-tax law requires the payment annually of an income tax on the net income of property held or business done by corporations. Code § 92-3102 as amended. In the present case there is no contention that the taxpayer is not subject to the general provisions of the income-tax law, or that the tax claimed to be due the State was not in fact due under the provisions of § 92-3102 as amended. It is contended, however, that the taxpayer is entitled to calculate taxes due by it in the manner applicable to long-term capital gains pursuant to the provisions of Code (Ann.) § 92-3119 (Ga. L. 1952, p. 405, et seq.; Ga. L. 1953, Jan.-Feb. Sess., pp. 267-268).

Whether or not the "capital gains" provision of our income-tax law (enacted in 1952) was taken from the United States Internal Revenue Code, is not material as to the legal effect of the contract between the taxpayer and St. Regis Paper Company. The State law controls in determining the legal effect of a contract executed pursuant thereto (Poe *v.* Seaborn, 282 U. S. 101; Helvering *v.* Stuart, 317 U. S. 154, 162); and paragraph 24 of the contract provides that it shall be construed according to the laws of Georgia. The construction of such contract is a question

of law for the court. Code § 20-701. Where the terms of a contract are ambiguous, the intention of the parties is a question for the jury. *Weems* v. *Georgia Midland &c. R. Co.*, 84 *Ga.* 356 (11 S. E. 503); *Summerour* v. *Pappa*, 119 *Ga.* 1 (45 S. E. 713).

In the absence of fraud, accident, or mistake, a complete, unambiguous contract can not be enlarged or varied by parol evidence which is inconsistent with the written instrument. *DeLoach & Brother* v. *Smith & Anderson*, 83 *Ga.* 665 (10 S. E. 436); *Holloway* v. *Brown*, 171 *Ga.* 481, 483 (155 S. E. 917); *Thomas* v. *Eason*, 208 *Ga.* 822 (69 S. E. 2d 729), and citations. It is not contended that there was fraud, accident, or mistake in the contract, or the execution thereof, between the taxpayer and St. Regis Paper Company. On the contrary, the contract is full, complete, and unambiguous, and it was the duty of the court to construe it. *Bozarth* v. *Paschall*, 158 *Ga.* 208, 209 (5) (122 S. E. 683). Allegations by the taxpayer in its appeal as to the nature, character, or extent of its business or operations prior to the execution of the contract are wholly irrelevant, and add nothing to the terms or legal effect of the contract. The stipulation by counsel (which includes the contract) as to compensation received for pulpwood sold amounts to nothing more than establishing that the pulpwood was derived from timber upon the lands described.

Possession of the lands, and the right of possession, for a term of sixty years under the contract having been acquired by St. Regis Paper Company, the Court of Appeals correctly held the contract to be a lease of the lands described. Code §§ 85-801, 85-806. Under the general law, which is in harmony with the rule in Georgia, the contract between the parties is a lease of the lands. 51 C. J. S. 804, § 202; 32 Am. Jur. 46, § 24. See also Black's Law Dictionary (3d ed.), p. 1081; 2 Bouvier's Law Dictionary (3d rev.), p. 1887.

The requirements of the lease that St. Regis Paper Company shall employ good forestry practices in restocking "lands cut over," by planting or otherwise, and limiting the amount of pulpwood to be removed annually to the "average annual growth," support the holding by the Court of Appeals that it was "the intention to lease the land for sixty years for the purpose of pine-tree farming."

Counsel for the taxpayer contend that in copying the language of the Federal law into the Georgia statute, it must be assumed that the language was intended to have the same meaning that it had been held to have under the Federal statute. A decision by a Federal court in point on its facts with the present case might be strongly persuasive, but not controlling, on the Georgia courts. Counsel have cited no case in point on its facts, and our extensive examination of Federal decisions has not revealed such a case. Counsel for the taxpayer cite and rely strongly upon Blodgett v. Commissioner of Internal Revenue, 13 U. S. Board of Tax Appeals, p. 1388; Stark v. Commissioner of Internal Revenue, 45 U. S. Board of Tax Appeals, p. 882; Carroll v. Commissioner of Internal Revenue, 70 Fed. 2d 806; and United States v. Robinson, 129 Fed. 2d 297.

As shown by the statement of facts in the Stark case, supra, the contract was one for the sale of standing timber, and the Board of Tax Appeals ruled against the contention of the Commissioner of Internal Revenue that the sale was from "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." In both the Stark and Blodgett cases the contract was limited to the sale of standing timber, and there was no lease of the property for the growing of trees over a long period of years.

In Carroll v. Commissioner of Internal Revenue, supra, the contract was one for the sale of standing timber, and it was held that, under the facts of that case, the standing timber was a capital asset. In United States v. Robinson, supra, the District Judge held that the timber was a capital asset and was not property held in the ordinary course of the taxpayer's trade or business. The Circuit Court, in affirming the District Judge, pointed out that the Government's claim was one extreme in its nature, in that the property in question was inherited by the taxpayer, was sold by her for the purpose of liquidation, and that she had never been engaged in any kind of business.

Based upon our consideration of cases, the decision by a Federal court nearest in point with the essential facts of the present case is that of Commissioner of Internal Revenue v. Boeing, 106 Fed. 2d 305. In the Boeing case independent contractors or agents

were engaged to cut and remove logs sold by the taxpayer. This was said to be insufficient for a holding that the respondent was not engaged in a trade or business. The court quoted with approval from Welch v. Solomon, 99 Fed. 2d 41, 43, as follows: "The personal attention which a taxpayer gives to a business is certainly not decisive as to whether a resulting profit is ordinary income or capital gain. One may conduct a business through others, his agents, representatives, or employees. The business is nonetheless his because he chooses to let others bear all of the burdens of management." In the Boeing case it was held that Boeing was engaged in the business of "selling logs," and that the income derived therefrom was income from a trade or business.

It is provided by the lease in the present case that no title shall pass until the wood is cut, that it is to be sold by the cord, and that a cord shall contain 128 cubic feet of rough, stacked wood. Counsel for the taxpayer in their brief quote headnote 3 from the decision of this court in *Clarke Bros.* v. *McNatt*, 132 *Ga.* 610 (64 S. E. 795), as follows: "A contract of sale in regard to timber which is attached to the soil, but which is presently to be severed therefrom and converted into personalty before the title is to pass to the purchaser, is an executory sale of personalty, and not of an interest in land." It is contended by counsel "that the contract is merely an executory contract to sell—an executory contract to sell personalty, to wit, timber severed from the land." Counsel cite the provision of the lease that "title to timber shall pass from seller to purchaser when and only when such timber is severed from the land," and it is contended that, if this provision of the contract is to be given effect, it must be held to be a provision for an executory sale of timber upon its severance.

The contract is not one for the sale of timber, but is one for the sale of pulpwood, at so much per cord, after it is cut and stacked, and, as contended by counsel, is a sale when consummated of personal property, since wood when cut and stacked is personalty. *Boyd* v. *Newton County*, 23 *Ga. App.* 358 (98 S. E. 237). The terms of the lease in the present case bring it squarely within the language of Judge Sibley of the Circuit Court of Appeals in *Brown* v. Commissioner of Internal Revenue, 69 Fed. 2d

863, 865, as follows: "We are of opinion that the timber was not sold as a whole, that a sale of none of it occurred upon the execution of the contract, but that sales were accomplished only as the timber was cut and removed."

The taxpayer here wholly fails to show that the sales of pulpwood by the cord as personalty fall within the term "capital asset" as defined by Code § 92-3119, as amended, or that the pulpwood has been held for more than six months as a capital asset by the taxpayer as required by the statute. Standing timber is a part of the realty (*Coody* v. *Gress Lumber Co.*, 82 *Ga.* 793, 10 S. E. 218; *Balkcom* v. *Empire Lumber Co.*, 91 *Ga.* 651, 17 S. E. 1020; *Foy* v. *Scott*, 197 *Ga.* 138, 28 S. E. 2d 107; *Shirling* v. *Hester*, 201 *Ga.* 706, 40 S. E. 2d 743), and as such is a capital asset. When timber is severed from the soil and cut and stacked into cord wood, as contemplated by the contract in the present case, it becomes personalty, and loses its former status as a part of the realty.

Counsel for the taxpayer in their brief insist that, "It is common knowledge, which must be noticed by the court, that 15 to 25 years are required to grow a pulpwood tree." The lease in the present case runs for a period of 60 years; and if it should be conceded that this contention is true, the lessee might cut many thousand cords of pulpwood from trees planted by it upon the land after the execution of the lease, as clearly contemplated by the terms of the lease. If, however, the lease should be denominated an executory contract to sell, as contended by counsel for the taxpayer, then there can be no valid contract to sell timber that was not planted and growing. *J. S. Noyes & Co.* v. *Jenkins*, 55 *Ga.* 586; *Huntington* v. *Chisholm*, 61 *Ga.* 270; *Forsyth Mfg. Co.* v. *Castlen*, 112 *Ga.* 199 (37 S. E. 485).

In so far as the 50 percent deduction from gross income as a "long term capital gain" may be construed as an exemption from income taxes, it falls within the principle that any exemption from taxation must be strictly construed in favor of the State; and the exception claimed will not be allowed unless it shall clearly appear that such was the intention of the General Assembly expressed in unambiguous terms. *Mayor &c. of Macon* v. *Central R. &c. Co.*, 50 *Ga.* 620; *Hightower* v. *Beall, Spears &*

494

*Co.*, 66 *Ga.* 102, 107; *Mundy* v. *Van Hoose*, 104 *Ga.* 292, 297 (30 S. E. 783); *Standard Oil Co. of Kentucky* v. *State Revenue Commission*, 179 *Ga.* 371, 372 (7) (176 S. E. 1).

Under the terms and conditions of the lease involved in the present case, the taxpayer has executed a long-term lease of lands for timber growing, cutting of pulpwood, saw timber, and turpentining, and this lease includes all improvements on the land, as well as all other surface rights, grazing and game rights, the proceeds of which, like the proceeds of any lease, are rent, or in the nature of rent, and constitute income under Code § 92-3107 as amended. See, in this connection, *Palmer Brick Co.* v. *Woodward*, 138 *Ga.* 289, 295 (75 S. E. 480), where it is held: "A lease may not only confer upon the lessee the right to occupy and cultivate and to remove the products of cultivation, but it may confer on him the power to occupy and remove a portion of that which constitutes the land itself."

Whether or not the taxpayer might be entitled to claim a reasonable allowance for depletion of timber under the provisions of subsection (f) of section 1-A of an act approved February 27, 1953 (Ga. L. 1953, Jan.-Feb. Sess., pp. 274, 278), is a question not now before this court.

Subsection (k) of § 117 of the Federal Revenue Code of 1939 was not adopted by the General Assembly, and is not of effect in this State, and the terms and provisions of this subsection have no application in the present case.

*Judgment affirmed. All the Justices concur, except Wyatt, P. J., and Candler, J., who dissent.*