## 44175. SUPERIOR PINE PRODUCTS COMPANY v. HAWES, Commissioner.

DEEN, Judge. This is an appeal from the revenue commissioner's assessment of taxes against Superior Pine Products Company involving the sole question of whether the cutting of timber and payment therefor by St. Regis Paper Company from lands of the appellant under a 60-year contract involves a transaction taxable as a capital gain or ordinary income for the years 1962, 1963 and 1964. The Judge of the Superior Court of Chatham County, hearing the case under an agreed jury waiver on stipulations of the parties, held with the contentions of the commissioner. Pertinent portions of the lease (excluding addenda which will be dealt with later) and dealing with the taxable years 1952 and 1953 will be found in *Williams v. Superior Pine Products Co.*, 97 Ga. App. 414 (103 SE2d 587), affirmed and modified in 214 Ga. 485 (106 SE2d 6). In general the lease stipulates that the owner sells to the purchaser during each year a stated quantity of timber estimated to represent that year's growth, payments to be on the basis of a scale of $2.00 per cord with the cordage equivalents of the various types of timber to be cut stated in the contract; that title does not pass until the timber is cut; that if the yearly cutting represents a surplus over the amount estimated, purchaser will pay for the excess on the same cordage basis; that if the yearly growth does not meet the amount stated, the purchaser will nevertheless pay for the stated amount but will have the right in any year in which there is an excess of yearly growth to credit the excess back against any former year (up to 12 years) in which a deficiency existed. In other words, as stated in St. Regis Paper Co. v. Aultman, 280 FSupp. 500, affirmed 390 F2d 878, a purchaser failing to cut growth it was entitled to cut in a given year had a right, in a subsequent year, to cut and pay for the agreed growth in such subsequent year and then to cut the backlog of uncut growth so that the purchaser may in each year take the scheduled amount if that is less than the annual growth, the actual growth is that that is less than the scheduled amount, or the total annual growth allocated to the scheduled amount and backlog respectively where there is a backlog and where the available timber is more than the scheduled amount.

After the decision of the Supreme Court above referred to, which held that the contract should be considered a lease rather than a sale, and the proceeds taxed as rent (ordinary income rather than capital gains) the legislature in an apparent effort to put income tax requirements in timber farming cases on a par with those of the Internal Revenue Code, enacted *Code Ann.* § 92-3119 (e) (8) (Ga. L. 1960, p. 117) as follows: "In the case of the disposal of timber held for more than 6 months before such disposal, by the owner thereof under any form or type of contract by virtue of which such owner does or does not retain an economic interest in such timber, the difference between the amount realized from the disposal of such timber and the adjusted depletion basis thereof, shall be considered as though it were a gain or loss, as the case may be, on the sale of such timber." Since this part of the law was enacted after the decision in *Superior Pine Products v. Williams,* 214 Ga. 485, supra, and since the cases, although involving the same lease, seek to settle tax liability for different years, the former case is not res judicata as to this one. *Ga. R. & Bkg. Co. v. Wright,* 124 Ga. 596 (2) (53 SE 251). *Code Ann.* § 92-3119 is in the language of the Federal Internal Revenue Code of 1939. Originally the above quoted portion, which appeared in that Code as Section 117 (k) and is Section 631 of the present Code, was omitted from the Georgia Act. As specifically noted in the former appeal, 214 Ga. 485, 494: "Subsection (k) of § 117 of the Federal Revenue Code of 1939 was not adopted by the General Assembly, and is not of effect in this State, and the terms and provisions of this subsection have no application in the present case."

It seems obvious that the application of the statute, once added by amendment to the tax laws of this State, should be given a construction in accordance with its plain meaning in State as well as Federal matters. "It must be remembered that the statute speaks of a disposal 'by any form or type of contract.' This language covers just about every means by which people come to an understanding with one another." Barclay v. U. S., 333 F2d 847, 855. Obviously there was a "disposal of timber"—the contract referred to the cutting of standing timber of stated size by the purchaser, who also agreed at its own expense to manage and operate the lands in accordance with good forestry practice. Obviously under the terms

of the Act it no longer matters whether the seller did or did not retain an "economic interest" therein. As to the other elements involved in the former case, appellant has for the years presently under consideration separated out the small amount of income attributable to turpentining operations rather than sale of timber and admitted tax liability thereon at the regular rate. The lease has also been modified, as to those provisions allowing the purchaser to use certain buildings, to state a rental figure for this use, which also has been returned as ordinary income.

This case under its facts does not come under the rule in Giustina v. U. S., 267 FSupp. 40, where a set amount per year was paid for timber regardless of the amount cut, or under U. S. v. Brown Wood Preserving Co., 275 F2d 525, which involved turpentining operations. The buyer is not obligated in all events to pay a fixed sum regardless of the growth potential of the timber lands, and there are lease provisions for raising or lowering the minimum cutting requirements in accordance with the growth factor. The agreement as executed in the years 1962-1964 inclusive lies well within the requirements of *Code Ann.* § 92-3119 (e) (8), and the transaction should be given capital gain treatment.

*Judgment reversed. Bell, P. J., and Eberhardt, J., concur.*

ARGUED JANUARY 9, 1969—DECIDED FEBRUARY 4, 1969— REHEARING DENIED FEBRUARY 14, 1969—

*Tillman, Brice, McTier & Coleman, B. Lamar Tillman,* for appellant.

*Arthur K. Bolton, Attorney General, William L. Harper, Melvin E. Thompson, Jr., Assistant Attorneys General,* for appellee.

