Myrtle P. **STEWARD**, et al., **Plaintiffs**,

v.

**ST. REGIS PAPER COMPANY,**
**Defendants.**

Civ. A. No. 78–404–P.

United States District Court,
S. D. Alabama, S. D.

Dec. 17, 1979.

---

Frank McRight and Patrick H. Sims, Mobile, Ala., for plaintiffs.

C. A. L. Johnstone, Jr. and Ben H. Harris, Jr., Mobile, Ala., for defendant.

## OPINION

PITTMAN, Chief Judge.

This action was first filed by Myrtle P. Steward and others against St. Regis Paper Company, as Case Number CV 78–118 in the Circuit Court of Escambia County, Alabama. The action was removed to this court upon the petition of St. Regis on the ground of diversity of citizenship. The action was tried before the court without a jury, on October 9, 1979.

This action seeks a declaration of the rights and legal relations of the parties pursuant to the Alabama Declaratory Judgment Act, Ala.Code §§ 6–6–220 to 6–6–232,

with regard to certain lands located in Escambia County, Alabama. The plaintiffs, owners of the lands and successors in title and interest to Frank A. Steward and Lula Minnie Steward, are: Myrtle P. Steward; Gussie Dean Sellers; Mary Frank Peacock; Broox G. Garrett, Sr.; Hugh M. Caffey, Jr.; Hugh Rozelle; Joe B. Thompson, Jr.; Clara B. Brooks; Hugh M. Caffey, IV; Constance C. Carpenter; and Paul D. Owens, as trustee for John Patrick Caffey, a minor. The defendant, St. Regis Paper Company, is a New York corporation.

The plaintiffs contend that a Timber Purchase Agreement with regard to those lands, entered into by their predecessors in title and St. Regis, is a lease required to be recorded by Ala.Code § 35–4–6. They contend that the agreement is void because it was not recorded within one year after execution, as required by that statute.[1] The defendant contends that the agreement is not a lease within the meaning of § 35–4–6, but a license, therefore it was not required to be recorded, and it remains in force.

The court has considered the evidence adduced at trial, the arguments, and the briefs of counsel. Based on the applicable Alabama law, the court is of the opinion that the Timber Purchase Agreement is not a lease, that Ala.Code § 35–4–6 does not require it to be recorded, and that § 35–4–6 does not render the agreement void. No rights or privileges of St. Regis under the agreement have ceased or terminated, insofar as § 35–4–6 is concerned.

### FINDINGS OF FACT

### AGREED FACTS

The defendant admitted orally during the course of the trial that the plaintiffs have title to the lands in question.

All parties have admitted the authenticity of the documents involved in this case. Attached hereto are the timber agreements

and amendments, the subject matter under consideration. They are as follows:

Exhibit I: Timber Purchase Agreement by and between Frank A. Steward and Lula Minnie Steward, and St. Regis Paper Company, dated as of April 1, 1958; Exhibits A and B to that agreement.

Exhibit II: Timber Cutting Agreement entered into by and between Frank A. Steward and wife, Lula Minnie Steward, and St. Regis Paper Company, dated as of April 1, 1958; Exhibit A to that agreement.

Exhibit III: First Amendment and Supplement to both agreements above, dated January 17, 1963; Exhibit A to that amendment.

Exhibit IV: Second Amendment and Supplement to the Timber Cutting Agreement, dated October 30, 1963; Exhibit A to that amendment.

All parties agree that none of these documents has been filed in the office of the judge of probate in the county in which the property is situated, Escambia County.

### FINDINGS BY THE COURT

The plaintiffs are citizens of the State of Alabama. The defendant is a corporation organized and existing under the laws of the State of New York, and has its principal place of business in that state.

The Timber Purchase Agreement and the Timber Cutting Agreement were executed at the same time, and refer to one another. The Cutting Agreement incorporates the Purchase Agreement by reference.

Taxes against the land in question here have been assessed in the names of Frank A. Steward and his successors in interest during the term of the Timber Purchase Agreement.

Plaintiffs Myrtle P. Steward, Gussie Dean Sellers, and Mary Frank Peacock are heirs of Frank A. Steward and Lula Minnie Steward who executed the agreements with

---

1. Alabama Code § 35–4–6 reads, in pertinent part:

   Leases for more than twenty years shall be void for the excess over said period unless

   . . . recorded within one year after execution in the office of the judge of probate in the county in which the property leased is situated.

St. Regis. Broox G. Garrett, Sr., Hugh N. Caffey, Jr., Hugh Rozelle, Joe B. Thompson, Jr., Clara B. Brooks, Hugh N. Caffey IV, Constance E. Carpenter, and Paul D. Owens as trustee for John Patrick Caffey, a minor, acquired their interest in the property in satisfaction of attorneys' fees from heirs and successors in title of Frank A. Steward and Lula Minnie Steward, or as heirs and successors of persons who received their interests in satisfaction of attorneys' fees.

No extrinsic evidence was offered, nor was any claim made, that Frank A. Steward and Lula Minnie Steward intended to convey a leasehold interest in the land or intended that the agreement was a lease. The court is faced with the task of determining whether or not the instrument constitutes a license, or a lease subject to the provisions of Alabama Code § 35–4–6, from the agreements under consideration and, if ambiguous, from the evidence offered concerning the possible uses made of it by the plaintiffs and the defendant. The court finds that the primary uses of the land are timber growing and cutting, hunting and fishing, and oil and gas production. Oil and gas wells are in production on certain tracts of the land. Oil and gas-producing wells and fields have been discovered on and within a fifteen-mile radius of the property. The defendants have been engaged in timber growing and cutting pursuant to the agreement.

The court finds that the plaintiffs and their predecessors in title have hunted on the property, and have entered into arrangements for the determination of oil and gas fields and drilling and production of oil and gas on the property.

It is likely that what has triggered this litigation is not dissatisfaction with the timber growing and cutting arrangement, but the discovery of oil and gas on and near the property and the necessity of sharing the benefits of oil and gas found on the property with the defendants.

## CONCLUSIONS OF LAW

The court has jurisdiction over the parties to this action, and over the subject matter of this action pursuant to 28 U.S.C. § 1442.

The central question in this case, whether the Timber Purchase Agreement is a lease or a license, is governed by two Alabama cases: *Holt v. City of Montgomery*, 212 Ala. 235, 102 So. 49 (1924); and *Mason v. Carroll*, 289 Ala. 610, 269 So.2d 879 (1972). A lease conveys an interest in realty, while a license conveys only the right to do some act or acts on the land of another, which is an interest in personalty and does not pass any estate in the land. *Holt v. City of Montgomery*, 212 Ala. 235, 102 So. at 50. The primary test for the type of interest conveyed was stated in *Holt* and *Mason* as follows:

> One of the principal tests in determining whether or not the contract is to be interpreted as a lease or a license is *whether or not it gives exclusive possession of the premises against all the world, including the owner*, in which case a lease is intended, or whether it merely confers a privilege to occupy under the owner, thereby indicating a license. (emphasis added)

*Id.*, 102 So. at 50–51, *quoted in Mason v. Carroll*, 289 Ala. 610, 269 So.2d at 880. The court in *Holt* noted that an affirmative intent to exclude the grantor from possession must appear, quoting with approval *Massot v. Moses*, 3 S.C. 168, 16 Am.Rep. 697 (1871):

> "Grants of a right to enter the lands of the grantor and sever therefrom and appropriate its products or mineral contents, are subject to a presumption not applicable to the case of a sale of personalty, that the grantor did not intend to exclude his own proprietary right to a concurrent enjoyment with the licensee of the power granted. * * * The presumption, indeed, demands some positive evidence of an exclusive intent . . . ."

*Holt v. City of Montgomery*, 212 Ala. 235, 102 So. at 51.

In *Holt*, the court examined the contract and found "nothing in the language of the contract, either in express language or by

necessary implication, which would exclude Holt, the owner, from possession of the premises." *Id.* In the later case of *Mason v. Carroll*, on the other hand, the court found evidence of such intent in the words " 'the exclusive right, privilege and license of constructing and operating' [a] . . . golf course." *Mason v. Carroll*, 289 Ala. 610, 269 So.2d at 880. In both cases the court examined the entire contract to determine the parties' intent, and focused most closely on the "granting clauses" of the contracts, employing the test discussed above.

Two groups of rights are granted to St. Regis by the Timber Purchase Agreement: rights relating to timber, and rights relating to oil, gas and minerals. The two groups will be discussed separately.

■ Paragraphs 5 and 11 of the Timber Purchase Agreement [hereinafter also TPA] describe the timber rights granted to St. Regis. They must be construed together with the provisions of the Timber Cutting Agreement. *See Commercial Contractors, Inc. v. U. S. Fid. & Guar. Co.*, 524 F.2d 944 (5th Cir. 1975) (Alabama contract law); *Brock v. Brock*, 245 Ala. 296, 16 So.2d 881 (1944) (deed construed with written agreement).

■ Paragraph 5 provides for "the right to cut, remove, and otherwise utilize" various amounts of pine pulpwood and hardwood. Paragraph 5 discloses no intent to exclude the grantor from the land. Paragraph 11 provides that:

Purchaser shall have, and is hereby granted a license to construct and thereafter to use, maintain, and occupy such buildings, improvements and facilities, including without limitation structures, mills, tracks, equipment, machinery, roads, bridges, ditches, canals, fences, and other improvements upon said land *which in its opinion shall be necessary or convenient* in carrying out its operations thereon and may at any time prior thereto or within six (6) months after the expiration or termination of this agreement remove the same whether or not so fixed to the land as to be regarded in law as a part of

the land, if Purchaser is not then in default hereunder. *Except as such rights are restricted or limited by other provisions of this agreement, to the exclusion of all others*, a license for all surface rights upon said lands needed from time to time by Purchaser in the development of the forest lands as herein contemplated, including free and unlimited logging privileges, elimination of undesirable woods, removal and sale of stumps, grazing rights for cattle, game, fish and wildlife management, the right of ingress and egress for Purchaser's agents, employees, invitees, licensees and timber contractors, and the right to build and operate railroads upon and over said lands for the purpose of removing timber and timber products therefrom and for the purpose of transporting timber, timber products, supplies, equipment and employees over or across said lands.

(Emphasis added.) The rights provided by paragraph 11 may be broadly described as construction rights and development rights.

With regard to construction rights, the court notes that St. Regis is given the right to erect such improvements "which in its opinion shall be necessary or convenient in carrying out its operations." The plaintiffs argue that this grant goes beyond the "rule of necessity" established by *Holt* where rights of access are called personalty rather than realty. This court does not read *Holt* so strictly. The contract in *Holt* provided that the owner would lay railroad tracks for removing gravel, and that the purchaser might "make such changes and extensions thereafter *as it may desire.*" *Holt v. City of Montgomery*, 212 Ala. 235, 102 So. at 50 (emphasis added).

Even if the plaintiffs' reading of *Holt* is correct, that does not compel the conclusion that this agreement is a lease. The principal test for a lease in *Holt* is whether the owner is excluded, expressly or "by necessary implication of the language used." The language in question does not imply an intent to exclude the owner, but to give maximum flexibility to St. Regis' operations. To the extent that it might be read

as excluding the owner, the language must be read consistently with the last sentence of paragraph 5, quoted below. That sentence makes clear that even "convenient" improvements must be incident to timber operations.

With regard to development rights, the court notes that the agreement provides those rights as "needed from time to time . . . in the development of the forest lands as herein contemplated." This language falls within the strictest reading of the "rule of necessity" in *Holt*. Further, the exclusion clause is limited by the language, "[e]xcept as such rights are restricted or limited by other provisions of this agreement." No such limitation was found in *Mason*, where the contract was held to be a lease. *See Mason v. Carroll*, 289 Ala. 610, 269 So.2d at 880. One "other provision" is paragraph 5, which states in part:

Seller and Seller's agents or representatives, shall have *access to the land for any and all purposes not inconsistent with the terms and provisions of this agreement*, including without limitation the right to inspect the lands at all reasonable times during working hours and observe cutting methods and forest practices conducted thereon.

(Emphasis added.) This sentence, read together with those passages granting rights to St. Regis, indicates that construction and development rights are not granted to the exclusion of the owner, but only as an incident to the sale of the timber. All grants of rights to St. Regis are qualified in some manner. The seller, on the other hand, has "access to the land for any and all purposes not inconsistent with" the agreement. To overcome the presumption of *Holt* against a grant of an interest in realty, there must be more.

Another provision which is referred to by paragraph 11 is paragraph 12, providing for oil and gas rights. As more fully discussed below, the seller had full control over the development of these resources, and the right to take possession of the land at any time for such development, subject only to payment to St. Regis for any damage to timber production or buildings.[2] Paragraph 12 is a clear indication that St. Regis does not have the right to possession of the land "to the exclusion of" the plaintiffs.

Two other provisions of the agreements reflect the correctness of this interpretation. The seller's warranty clause does not promise exclusive possession, but "exclusive possession . . . to the extent . . . set forth in this agreement." It reads:

Seller hereby warrants to the Purchaser . . . that Seller will secure and maintain the Purchaser, its successors and assigns, in full, complete and exclusive possession of the land . . . and the timber thereon *to the extent, in the manner and for the purposes* as set forth in this agreement . . . . .

TPA, ¶ 13A at 23–24 (emphasis added). The Timber Cutting Agreement describes the rights transferred as rights of entry rather than rights of possession:

[T]he Seller . . . [h]as granted to Purchaser, its successors and assigns, the exclusive license, right, privilege and power to enter upon all lands of the Parties of the First Part located in Escambia County, Alabama . . . for the purpose of conducting timber and forestry operations on said lands and cutting and removing from said land all timber now or hereafter to be grown or growing thereon . . . . .

TCA, ¶ 1(a).

The second group of rights, oil, gas and mineral rights, are provided by paragraph 12 of the Timber Purchase Agreement:

The Seller hereby reserves all oil, gas and mineral rights under the surface of said land, together with the right to explore for, mine, drill, produce, remove and sell the same, and the exclusive right to make leases, or other agreements in con-

---

2. Paragraph 12A gives St. Regis control over the spacing of wells. This appears to be for the purpose of protecting the land for timber production, and is necessary because paragraph 4

does not provide for a decrease in the amount of the minimum payment of 1500 cords per year as a result of oil production.

nection with, or with respect to the exercise of, the above reserved rights . . . .

Paragraph 12 goes on to provide that St. Regis will receive fifty percent of all sums received by the seller for oil, gas or minerals. Title does not pass to St. Regis until the resources have been severed from the land. St. Regis has no right to develop oil, gas or mineral resources, or to cause the seller or anyone else to develop them. It is clear, therefore, that St. Regis' interest in the resources is not an interest in realty. *See Milford v. Tennessee River Pulp & Paper Co.*, 355 So.2d 687, 689 (Ala.1978). *See also Singley v. Dempsey*, 252 Ala. 677, 42 So.2d 609 (1949).

Having examined these and other provisions of the Timber Purchase Agreement and the Timber Cutting Agreement, the court concludes that the parties did not intend to exclude the grantor from the land. The primary test of *Holt* and *Mason*, therefore, indicates that the agreement is a license rather than a lease.

The court in *Holt* and *Mason* employed several other tests to determine the nature of the interest conveyed, each involving an examination of the contract itself. The tests are not so important as the intent to exclude the grantor; they do, however, shed some light on whether an interest in realty is the subject of the contract.

One test involves the nature of the consideration given: whether it is "single," indicating a lease, or determined according to the quantity of timber or other resource taken. Paragraph 4 of the Timber Purchase Agreement makes it clear that payments under the agreement are for timber bought and sold, and not for rental payments:

> The Purchaser, upon delivery of this agreement, has paid to the Seller Three Thousand Dollars ($3,000.00) as the purchase price of 750 cords of pulpwood, and subject to the provisions and limitations of this agreement, Purchaser shall pay to Seller . . . [on the first day of each quarter] one-fourth of the purchase price of 1,500 cords of pine pulpwood . . . .

That the payments are regular and not subject to decrease does not change their nature, but ensures that the grantor would have a steady income, and that St. Regis would use reasonable efforts to develop the land. That the payments are for timber rather than rent is also supported by paragraph 4B:

> Should Purchaser, during any one or more calendar years hereafter not cut, remove or otherwise utilize timber in the amount Purchaser is required to pay for with respect to such year, then Purchaser shall be entitled to cut, remove or otherwise utilize, during subsequent years, the quantity of timber so paid for but not cut, removed or otherwise utilized in prior years . . . . .

Another test utilized by the court in *Holt* was whether the contract contained any words of grant or demise. The Timber Purchase Agreement contains no technical words of grant or demise; as noted above, no grant of an interest in realty may be implied from paragraphs 5 and 11.

The court in *Holt* examined the contract to determine what it "purport[ed] on its fact" to convey, noting particularly the purpose of the contract as stated in its first paragraph, to sell gravel. The Timber Purchase Agreement states that "Seller hereby agrees to sell to Purchaser and Purchaser hereby agrees to buy from Seller during . . . . [a 60-year term] all timber growing and to be grown on, and timber rights and licenses . . . on the land in Escambia County, Alabama . . . ." TPA, ¶ 1A. The timber rights and licenses, as noted above, are not an interest in realty.

■ Another test utilized in *Holt* is whether the instrument creating the rights is executed with the formalities necessary for the conveyance of an interest in realty. Both the Timber Purchase Agreement and the Timber Cutting Agreement contain Lula Minnie Steward's separate acknowledgement that she signed the instruments without coercion from her husband, an acknowledgement usually found only in a doc-

ument conveying an interest in realty. This fact does not overcome the tests of *Holt* and *Mason.* The parties appear to have been extremely careful not to convey an estate in the land to the defendant. Paragraph 23 of the Timber Purchase Agreement provides for the execution of instruments by the seller indicating the interests conveyed, and by the purchaser releasing all claims regarding the land. The purchaser's instrument is to be

> a good and sufficient instrument in writing, . . . releasing and surrendering to Seller, with covenants of special warranty, the said lands and timber and all the right, title, interest, claim and demand of Purchaser in, to and under this agreement . . . .

TPA, ¶ 23B at 43. No claim of title to the land could possibly be made by St. Regis under the agreement; rather, it appears that the parties provided for releases of the various rights conveyed to prevent the possibility of a cloud on title including any claim of a conveyance of an estate in the land.

The separate acknowledgement probably arose out of an overabundance of caution and to ascribe to it an intent to convey an estate in the land is contrary to all other indices.

■ The court in *Mason* noted, in holding the contract to be a lease, that the contract was for a term of five years. *Mason v. Carroll*, 289 Ala. 610, 269 So.2d at 881. That such a contract is for a term of years, however, does not compel the conclusion that it is a lease. In *Holt*, where the contract was held to be a license, the contract was for a term of two years. *Holt v. City of Montgomery*, 212 Ala. 235, 102 So. at 50. The plaintiffs also note that in *Mason*, the court found it important that the contract was not terminable at will, in holding it a lease. *Mason v. Carroll*, 289 Ala. 610, 269 So.2d at 881. In *Holt*, however, the court had previously recognized that a license coupled with an interest is not revocable at pleasure. *Holt v. City of Montgomery*, 212 Ala. 235, 102 So. at 50. A license coupled with an interest is an interest in personalty,

and so cannot be described as a lease. *See Camp v. Milam*, 291 Ala. 12, 19, 277 So.2d 95, 100 (1973).

The contract in *Mason* repeatedly used landlord-tenant terms, lessee, leases and leased premises. No such terms were in the *Holt* contract or the contract under consideration.

Three other arguments made by the plaintiffs bear mention. First, the plaintiffs note that paragraph 5A provides that St. Regis will "manage and operate said lands and the timber thereon" according to good timber practices, and that paragraph 8 requires St. Regis to keep accurate records of "the management, control, use and reforestation of said land." These provisions do not come from the paragraphs in the contract which grant rights to St. Regis, but from paragraphs imposing duties. They do not overcome the court's interpretation of paragraphs 5 and 11.

■ Second, the plaintiffs note that paragraphs 9(a) and 9(c) provide that St. Regis will pay all costs and expenses of the management of the land, and all ad valorem taxes assessed against the land. These provisions do not establish that an interest in realty was transferred, but appear to be included in order to ensure that the plaintiffs would receive a constant income from the timber. The fact that taxes were assessed in the names of Frank A. Steward or his successors in interest during the term of the contract makes the plaintiffs' interpretation of paragraphs 9(a) and (c) at best inconclusive.

Finally, the plaintiffs note paragraph 14 of the Timber Purchase Agreement providing for St. Regis' default:

> Seller may at his option terminate the right of Purchaser to cut or remove or otherwise utilize said timber and *may take possession* of said lands . . . .

(Emphasis added.) Similar language was present in *Mason. See Mason v. Carroll*, 289 Ala. 610, 269 So.2d at 881. Although this argument has merit, the inference from paragraph 14 that St. Regis has "possession" as the word is used in *Holt* and *Mason* is negated by paragraphs 5 and 11.

Based on all the tests established by *Holt* and *Mason*, the court concludes that the Timber Purchase Agreement is not a lease. The plaintiffs cite three cases, apparently to the contrary. *Superior Pine Products v. Williams*, 214 Ga. 485, 106 S.E.2d 6 (1958), contains too little discussion to be useful to this court. In *Williams v. Superior Pine Products Co.*, 97 Ga.App. 414, 103 S.E.2d 587 (1958), the court stated that the controlling issue was "whether capital assets are depleted," a different issue. Similarly, in *Superior Pine Products v. United States*, 31 A.F.T.R.2d ¶ 73–579 (Ct.Cl.1973), the issue was whether the owner had a "retained economic interest" in the timber in place. Although the courts in those cases addressed the question whether an instrument was a lease or a license, their focus was on issues relating particularly to taxation. The central issue here, lease or license, was incidental to the central issue of those cases, taxation. The cases are therefore less useful in this case than *Holt* and *Mason*, which consider the lease—license issue to determine the precise question of whether an interest in realty was conveyed. To the extent that these cases are apposite to the holding herein, this court respectfully disagrees.

■ One question remains in this case regarding evidence introduced by the plaintiff regarding the actual or potential uses of the land in question here. Under Alabama law, where an instrument is not ambiguous, reference may not be had to extrinsic evidence to interpret it. *Financial Investment Corp. v. Tukabatchee Area Council, Inc.*, 353 So.2d 1389, 1391 (Ala. 1977); *Wilkins v. Ferguson*, 294 Ala. 25, 310 So.2d 879 (1975). Although the Timber Purchase Agreement is complex, it is not ambiguous.

In determining that the agreement is not ambiguous, this court is mindful of the statement in *Holt*, that "[l]icenses are often granted upon such terms and conditions and upon considerations which ally them so closely to leases, that it is frequently difficult to distinguish between them." *Holt v. City of Montgomery*, 212 Ala. 235, 102 So.

at 50. Faced with the possibility of a forfeiture under Ala.Code § 35–4–6, a grantee should have clear notice from the document itself that he has received an interest in realty. Plots of land, as well as the rights which may be granted therein, are of almost infinite variety. In going beyond the four corners of an instrument, courts must be careful not to introduce undue confusion into the decision whether or not to record the instrument. The need for certainty in the face of a possible forfeiture is best served by a reasonable attempt to determine the intent of the parties from the face of the instrument.

Even were this court to conclude that the Timber Purchase Agreement is ambiguous, the result would follow nevertheless that St. Regis did not receive an interest in realty. The plaintiffs' extrinsic evidence regarding the actual or potential use of the land demonstrates that it may be used for timber production and oil and gas production. The plaintiffs are benefiting from the timber agreements and have reserved for themselves, and have in fact used and taken possession of the land for the production of oil and gas, the potentially most lucrative uses.

■ The test to be employed in examining the extrinsic evidence is whether the grantee has received "exclusive possession of the premises against all the world, including the owner." *Mason v. Carroll*, 289 Ala. 610, 269 So.2d at 880; *Holt v. City of Montgomery*, 212 Ala. 235, 102 So. at 50–51; *see Sproul v. Gilbert*, 226 Or. 392, 359 P.2d 543, 549–50 (1961). Examining the actual use of the land during the term of the Timber Purchase Agreement, it is clear that the seller and his successors in interest have had possession of the land, and have not been excluded by St. Regis' exercise of its rights.

It is therefore ORDERED, ADJUDGED, and DECREED that the Timber Purchase Agreement entered into by Frank A. Steward, Lula Minnie Steward, and St. Regis Paper Company is not a lease within the meaning of Ala.Code § 35–4–6, that the agreement is not void as a result of that

section, and that no rights or privileges of St. Regis under the agreement have ceased or terminated, insofar as that section is concerned.