Jimmy D. Vardaman and his wife, Francis Vardaman, appeal from a summary *Page 963 
judgment in favor of the Florence City Board of Education, in their action seeking damages for breach of contract. We affirm.
The following material facts are undisputed: Jimmy D. Vardaman suffered personal injuries when a large metal bar that supported the stage lighting fixtures in the auditorium of Coffee High School fell and struck him. Coffee High School is under the control and supervision of the Florence City Board of Education ("the Board"). At the time of the accident, Mr. Vardaman, who had permission to be in the auditorium, was assisting in the preparation of a stage set for an upcoming play to be performed by the Gingerbread Playhouse, a theatrical group to which he belonged. The Gingerbread Playhouse, which was not a part of the Florence school system, but which, on occasion, had provided for the participation of the system's students in its productions, was granted permission by the Board and the principal of the high school to use the auditorium free of charge, subject to the Board's rules and regulations governing the use of school facilities. Those rules and regulations appear in a document entitled "USE OF SCHOOL FACILITIES — FLORENCE CITY SCHOOLS," which, in pertinent part, provides:
"POLICY
 "The buildings, grounds, equipment and facilities of the public schools of the City of Florence are under the control and supervision of the Florence City Board of Education which is vested by law with all powers necessary or proper for the administration and management of such property.
 "The Florence City Board of Education has the power and authority to determine who, and for what purposes, school facilities may be used.
 "Permission to use public school facilities may be granted to non-school groups under such rules and regulations as the Florence City Board of Education may prescribe. . . .
"RULES AND REGULATIONS
"Damages and Liabilities
". . . .
 "All non-school users of public school property must as a condition precedent to securing a use permit assume full liability for any and/or all personal injuries arising from use of the facility for the particular rental period."
Mr. Vardaman sued the Board for breach of contract, alleging in one count that the Board had "expressly contracted with the Gingerbread Playhouse to provide safe and proper facilities," and in another count that the Board had "impliedly contracted with the Gingerbread Playhouse to provide safe and proper facilities." Mrs. Vardaman sued derivatively for loss of consortium. The trial court granted a summary judgment for the Board. That judgment, in pertinent part, reads as follows:
 "The defendant Florence City Board of Education has moved for summary judgment on the grounds that it has tort immunity and that there was no contractual duty to provide reasonably safe premises. The plaintiffs concede tort immunity but allege a contract existed. The basis for the alleged contract is the Board's printed policy allowing use of school facilities by non-school organizations.
 "A review of that policy establishes that the Gingerbread Playhouse organization was a licensee and not a lessee. The policy itself only speaks in terms of giving a 'use permit' to such organizations. Exclusive possession is not given to such organizations. Holt v. City of Montgomery, 102 So. 49, 212 Ala. 235 (1924), Steward v. St. Regis Paper Co., 484 F. Supp. 992 (S.D.Ala. 1979). Additionally, the Gingerbread Playhouse entered the premises for its own benefit. The Board received no benefit. The fact that students in the school system participate in the plays may confer a benefit upon them but not upon the Board. Nelson v. Gatlin, 288 Ala. 151, 258 So.2d 730 (1972). Accordingly, [because he was] a licensee, the [Board] only owed the [plaintiff] the 'tort' duty not to willfully *Page 964 
or wantonly injure him. There is no law creating implied contractual duties arising out of a license. Even if contractual duties were implied from a license, the duties would be no more than to refrain from willful or wanton conduct. Otherwise, a licensor would have a 'tort' duty to refrain from wanton conduct and a 'contract' duty to provide reasonably safe premises. This Court is not inclined to change the established law regarding landowners' responsibilities to others.
 "The plaintiffs do not fall within the 'paid admission' theory established by Sims v. Etowah County Board of Education, 337 So.2d 1310 (Ala. 1976). The injured plaintiff paid no admission. Brown v. Covington County Board of Education, 524 So.2d [623] (Ala. 1988).
 "Accordingly, summary judgment is hereby entered on behalf of the Florence City Board of Education."
We should note at this point that the "scintilla rule" was made inapplicable to cases filed after June 11, 1987, see Ala. Code 1975, § 12-21-12; this action was filed after that date. Proof by "substantial evidence" is now the test when passing on a motion for summary judgment. In Ross v. Edwards,541 So.2d 507 (Ala. 1989), this Court, quoting Bass v. SouthTrust Bank,538 So.2d 794 (Ala. 1989), stated as follows:
 " 'When the scintilla rule was in effect, it meant that when a party moving for summary judgment made a prima facie showing, on the basis of affidavits and other matters enumerated in Rule 56, Ala.R.Civ.P., that there was no genuine issue of material fact, then the burden shifted to the non-moving party to show that there was at least a scintilla of evidence in his favor. Hutchins v. State Farm Mut. Auto. Ins. Co., 436 So.2d 819, 825
(Ala. 1983). The Act abolishing the scintilla rule does nothing to change the procedure for handling the burden of proof, so if the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden still shifts to the non-movant; however, the burden is now greater than in the past, because the non-movant must show "substantial evidence" in support of his position.' "
The Vardamans' contention, as we understand it, is that the evidence before the trial court was sufficient to show that a contract arose between the Board and the Gingerbread Playhouse, and that the Board's rules and regulations governing the use of its school facilities reflect the expressed terms of that contract. See Belcher v. Jefferson County Board of Education,474 So.2d 1063 (Ala. 1985). They argue, however, that not all of the terms of the contract between the Board and the Gingerbread Playhouse were expressly stated. The Vardamans contend that the circumstances surrounding the Board's relationship with the Gingerbread Playhouse show that the Board impliedly promised to provide the group with a safe facility in which to carry on its activities. Accordingly, they argue that summary judgment for the Board was improper because, they say, questions of fact exist as to whether the Board contractually undertook to provide the Gingerbread Playhouse with a safe facility. They maintain that they are entitled to recover from the Board for breach of contract under a third-party beneficiary theory.
The Board takes the position that summary judgment was proper because, it says, there was no evidence of any consideration to support a finding of the formation of a contract.
Although we do not necessarily concur in the rationale given by the trial court for its judgment, see Smith v. EquifaxServices, Inc., 537 So.2d 463 (Ala. 1988); Maryland CasualtyCo. v. Tiffin, 537 So.2d 469 (Ala. 1988); Tucker v. Nichols,431 So.2d 1263 (Ala. 1983), we hold, nonetheless, that summary judgment for the Board was proper. The Vardamans acknowledge and, indeed, base their argument on the fact, that the Gingerbread Playhouse, in exchange for permission to use the auditorium, agreed to the rules and regulations that had been adopted by the Board, one of which required that "[a]ll non-school users of public school property . . . assume full liability for any and/or all personal injuries arising from [the] use of the facility for the particular rental period," *Page 965 
as a condition precedent to securing a use permit. Consequently, even assuming that the Vardamans are correct in their assertion that the evidence was sufficient to show that a contract arose between the Board and the Gingerbread Playhouse, the undisputed facts in this case show that the Gingerbread Playhouse expressly agreed with the Board to assume the risk of injury that arose from its use of the auditorium. It has long been recognized in Alabama that the existence of an express contract generally excludes an implied agreement relative to the same subject matter. See Alexander v. AlabamaW. R.R., 179 Ala. 480, 60 So. 295 (1912); Loval v. Wolf,179 Ala. 505, 60 So. 298 (1912). See, also, 11 Williston onContracts, § 1295 (3d ed. 1968). We can find no support in the record for the Vardamans' contention that the Board impliedly undertook to provide the Gingerbread Playhouse with a safe facility.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES and KENNEDY, JJ., concur.
JONES, J., CONCURS in the result.